## 69923. CUNNINGHAM v. NATIONAL SERVICE INDUSTRIES, INC.

(331 SE2d 899)

BIRDSONG, Presiding Judge.

Plaintiff/appellant Leona R. Cunningham, a nurse employed at the Ridgeview Institute on South Cobb Drive in Smyrna, Georgia, was attempting to exit from the driveway of Ridgeview and turn left across the two northbound lanes. South Cobb Drive is a four-lane road with a center turning lane. Plaintiff indicated a left turn with her turn indicator while waiting in the driveway for traffic to clear. Defendant's linen truck was proceeding north on South Cobb Drive and signaled with his turn indicator for a right turn into Ridgeview's driveway. Defendant's truck could not enter because of plaintiff's vehicle, and plaintiff's view of oncoming traffic from the left was blocked by defendant's truck. Plaintiff stated: "So we waited for awhile and nothing. You know, there was no way. He waved me on to come on. I didn't see anything. I hadn't seen anything but his truck. I went very slowly to go and that's all I can remember." She was struck by another northbound car in the inside northbound lane. Cunningham described the defendant driver's hand signal as: "He just moved it from right to left. . . ." Plaintiff's car was struck by the northbound vehicle at the door by the driver.

A witness to the incident was in the center turning lane attempting to enter the Ridgeview driveway. She saw the vehicle approaching her which struck the plaintiff. Her affidavit states: "Just as plaintiff's vehicle pulled out, past the large red truck, the white car struck the driver's side of plaintiff's vehicle. Based upon my view of this event and the resulting collision, it is my testimony that the plaintiff had no time to react or respond to the white car which hit plaintiff. In fact, it is my opinion that plaintiff, in all probability, may not have even seen the vehicle which struck her."

Defendant filed a motion for summary judgment. Plaintiff contended she relied upon the defendant's driver's signal which obstructed her view of northbound traffic on South Cobb Drive. Defendant argued that plaintiff could not, as a matter of law, rely on the defendant's driver's actions. In its order, the trial court held that while there is a genuine issue of fact as to whether the plaintiff relied on defendant's driver's "waving" the plaintiff to move out of the driveway, there is no genuine issue as to any material fact and, as a matter of law, plaintiff could not rely upon the hand signal of the defendant's truck driver and gave judgment for defendant. Plaintiff brings this appeal. *Held*:

Counsel for defendant states that this is a case of first impression. There are two similar cases in which a plaintiff relied upon the signal of another and was involved in an automobile accident as a

result. In *Louisville & Nashville R. Co. v. Ellis*, 54 Ga. App. 783 (189 SE 559), plaintiff's auto approached defendant's railroad crossing and her view of traffic on the other side was blocked by the train. A trainman signaled her to proceed and "[r]elying on the signal," she crossed and was struck by a truck. We found that "all persons are presumed by the law to anticipate or foresee the reasonable and natural consequences of their conduct" (p. 785) and "where a railroad has created a dangerous situation at a street and railroad crossing, and the jury could reasonably find that the same was the proximate cause or one of the proximate causes [cit.] of the plaintiff's injury, there would be a case of liability alleged against such railroad." Id. p. 786.

We held that although the act of the trainman in "beckoning and signaling to plaintiff to proceed can be said to have been without the expressed or implied assent of the railroads, and they had limited his duties to attending to the train, and at crossings his duty did not extend beyond seeing that his train [did] not injure any one at the crossing, the railroad companies would be responsible for the wrongful act of the trainman, if committed in the prosecution of his business with the railroads, and if as a result thereof the plaintiff was injured." Id. We reasoned that "[w]ithout the act of the trainman in beckoning to the plaintiff to proceed across the intersection, after she had come to a stop on seeing the train at the crossing, the collision between plaintiff's car and the truck of the Atlantic Ice and Coal Company would not have occurred. . . . While a trainman is not a traffic officer, and ordinarily the extent of his duty does not include the regulation of traffic . . . still, where his train blocks the vision of a motorist or other traveler approaching a crossing . . . and beckons her to proceed forward, a jury might easily find that such trainman did see, or could have and ought to have seen, a truck approaching on the blind side of the crossing to the traveler to whom he was motioning to proceed forward, which blind condition was caused by his train obstructing the vision of such person at the crossing. In these circumstances the petition makes a case for submission to a jury. . . . A jury could find that this plaintiff exercised due care for her own safety when she brought her automobile to a stop on observing the train at the crossing, and that she would not have proceeded forward at the time except for the . . . beckonings by the trainman to come forward, which she naturally supposed meant that the way was clear both of the train and of any danger on the other side thereof where her vision was obstructed by such train." Id. pp. 786-787.

In the instant case the record does not reveal any evidence which refutes plaintiff's testimony that defendant's driver gave her a hand signal. In her response to defendant's interrogatories, plaintiff contended that defendant's truck blocked her view of the northbound lanes of South Cobb Drive and because "the linen truck driver had

blocked the plaintiff's view of the oncoming traffic, the driver of the truck gave plaintiff a hand motion to proceed out onto South Cobb Drive. . . ." They contend defendant was negligent in blocking plaintiff's view and "by waving plaintiff into the intersection without being certain that no oncoming traffic was approaching."

In a similar case, *Hollingsworth v. Harris*, 112 Ga. App. 290 (145 SE2d 52), the defendant had parked a truck on the right hand side of a street, apparently not in violation of any ordinance, and a police officer saw a speeding car approach from the opposite direction, made a U-turn to chase the speeding vehicle and was struck by another vehicle hidden from his view by the parked truck which was racing with the first speeding vehicle. We found that "it cannot be said as a matter of law that stopping a motor vehicle on a street in such manner as to block the vision of others having a right to its use is non-negligent as a matter of law." Id. p. 292. However, in the instant case defendant's truck was not parked and the person whose vision was being blocked was attempting to enter the same street.

One other Georgia case has similar features. The cases of *Shirley Cloak &c. Co. v. Arnold*, 92 Ga. App. 885 (90 SE2d 622) and *Arnold v. Chupp*, 93 Ga. App. 583 (92 SE2d 239), arose out of the same incident. Plaintiff Arnold was following defendant Shirley's truck on U. S. 41 north of Milner, Georgia, for about 20 minutes. He was unable to pass the truck, but the driver of the truck began flashing his left-hand turn blinker, which was a customary signal given by drivers of trucks when it was safe to pass. As Arnold started around the truck, the driver gave him a hand signal, which was customary for drivers to give when the way ahead was clear. Arnold started around the truck and saw a second truck in front of Shirley's truck and then headlights of an oncoming car came into view; Arnold could not get between the two trucks because of a lack of space and he collided with the other vehicle head-on. Plaintiff Chupp was a passenger in the other vehicle and brought the subsequent suit which is reported in 93 Ga. App. 583. Defendant Shirley contended, as did defendant National Service in the instant case, that the proximate cause of the accident was plaintiff's own negligence in failing to exercise ordinary care for his safety as required by statute. We held that "[w]hile the defendant's driver was under no obligation to give the plaintiff any signal at all, when he undertook to do so a duty devolved upon him to exercise ordinary care to see that the way was clear ahead for the plaintiff's car to pass safely, and whether he did so under the circumstances is a question [of fact] for the jury's determination." *Shirley*, supra, p. 892. At this point, we should note that this action was between the person who gave the signal and the person who acted upon the signal.

In *Arnold v. Chupp*, supra, the suit was by a plaintiff who was

injured as a result of the actions of the defendant driver of the passing vehicle who had acted on the signal of the truck driver. Hence, as between the driver of the vehicle who gave the signal and the driver who acted on the signal, we found that the driver who gave the signal was under a duty to exercise ordinary care. As between the injured party in the vehicle that was struck by the concurrent actions of the other two vehicles, we held that the driver of the passing vehicle had no right to rely upon the signal of the leading vehicle because one cannot delegate a statutory duty requiring care to escape his negligence and the consequence of his delegation. *Arnold*, supra, p. 587. However, we specifically noted there that "[w]hat is here said relates to situations where parties other than the person giving the signal and the one relying upon it are involved. . . ." Id. p. 587.

Professor Prosser agrees with *Shirley*, supra, that a duty may arise even where the undertaking is gratuitous, if by such an undertaking the actor has induced the other to rely upon his actions and forego reliance upon his own performance. Prosser, Law of Torts (4th ed.) 626, § 93. Prosser gave as an example that if a truck driver gratuitously signals to a car behind him that it may safely pass, "he will be liable if he fails to exercise proper care and injury results." Prosser, Law of Torts (4th ed.) 343, § 56. Restatement is in accord: "One who undertakes, gratuitously or for consideration, to render services to another *which he should recognize as necessary for the protection of a third person* or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm . . . or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphasis supplied.) Restatement, Torts 2d, § 324A.

"An act may be negligent if the actor intends to prevent, or realizes or should realize that it is likely to prevent, another or a third person from taking action which the actor realizes or should realize is necessary for the aid or protection of the other." Restatement, Torts 2d, § 305. Hence, if a person signals another that the way is safe for the other's vehicle to pass, or to cross in front of him, he should realize that his voluntary action may cause reliance upon his signal which causes the other person to forego reliance upon his own lookout, which is necessary for the aid or protection of the person signaled. "(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results (a) to the other, or (b) to such third persons as the actor should expect to be put in peril by the action taken. (2) Such negligence may consist of failure to exercise reasonable care (a) in ascertaining the accuracy of the information, or (b) in the manner in which it is com-

municated." Restatement, Torts 2d, § 311. Restatement gives as an illustration a driver of a truck signaling a following car that it is safe to pass and in reliance on the signal the passing car collides with an oncoming car. The owner of the truck is subject to liability to the passing vehicle's occupants. Restatement, Torts 2d, § 311, 108.

Decisions of other states lack unanimity — both in reasoning and in judgment. It has been held that a signal by one motor vehicle operator to another is nothing more than "to get out of the way or move on" (*Shank v. Government Employees Ins. Co.*, 390 S2d 903 (La. 1981)); it could be either a yielding of the right-of-way or an act of frustration, but could not have been interpreted reasonably that it was safe to cross (*Nolde Bros. v. Wray*, 266 SE2d 882 (Va. 1980)); the other car could proceed and the signaling driver yielded his right-of-way (*Devine v. Cook*, 279 P2d 1073 (Utah 1955)); the signal was a manifestation that as far as he was concerned the other party could proceed (*Dix v. Spampinato*, 344 A2d 155 (Md. 1975).

There is a plurality, and probably one to which this state belongs. It is that " '[q]uestions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases.' " *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448 (224 SE2d 25). Added to that list are related issues of assumption of risk, lack of ordinary care for one's safety, lack of ordinary care in failing to foresee a condition which could cause injury (*Cowart v. Five Star Mobile Homes*, 161 Ga. App. 278, 279 (291 SE2d 13)), and even where there is no dispute as to the facts, it is usually for the jury to say whether the conduct in question met the standard of the reasonable man. *James v. Sears, Roebuck & Co.*, 140 Ga. App. 859 (232 SE2d 274). " 'Unless no other conclusion is permissible, questions of negligence are matters for jury resolution and are not ordinarily susceptible to summary adjudication.' " *Epps Air Svc. v. DeKalb County*, 147 Ga. App. 195, 196 (248 SE2d 300).

In *Webb v. Perry*, 158 Ga. App. 409 (280 SE2d 423), where two vehicles met in different traffic lanes and one driver signaled to another driver who in reliance upon that signal proceeded until he was struck by a different vehicle in another lane, we held that "an issue of negligence remained for the jury." Id. p. 411. Virginia has concluded that most courts appear to hold that under certain circumstances, a driver's hand signal can constitute negligence and the dispositive issue is whether a jury could reasonably determine whether the signaling driver was negligent in giving the hand signal. *Nolde Bros. v. Wray*, supra, p. 883. The Fifth Circuit, in a case arising in Georgia, involving a car passing a truck following a hand signal "to come on by" found that it was for the jury to resolve the conflicts and confusion. *Petroleum Carrier Corp. v. Carter*, 233 F2d 402 (5th Cir. 1956).

In a Michigan case where a driver gave a hand signal to a pedestrian who was later injured when trying to cross a four-lane road, the court found summary judgment inappropriate; it followed an earlier case involving another signal by a truck driver to a pedestrian that she could cross, to the effect that questions as to whether the plaintiff proceeded as a result of the defendant's action or whether such possible act of negligence was superseded by the intervening neglect of plaintiff in not exercising ordinary care or keeping a proper lookout, were questions for the jury. *Sweet v. Ringwelski*, 106 NW2d 742 (Mich. 1961); *Gamet v. Jenks*, 197 NW2d 160 (Mich. 1972). A Minnesota court found that where one driver signals to a following driver that it is safe to pass and an accident occurs, the signaling driver was liable in damages for all reasonably foreseeable consequences if he did not exercise reasonable care and the issue was for the jury. *Thelen v. Spilman*, 86 NW2d 700 (Minn. 1957).

Missouri courts also follow this rule. Where a schoolbus driver proceeding in a westerly direction, signaled a driver proceeding in an easterly direction to "come on through" and the driver, in response to the signal, struck a child, it was held that the issue of the bus driver's failure to exercise care was properly submitted to the jury as against the argument that he could not reasonably have anticipated that the accident would result. *Miller v. Watkins*, 355 SW2d 1 (Mo. 1962). A West Virginia court found that where traffic was stopped in one lane and a driver "made a waving motion" with his hand whereby two pedestrians (children) proceeded in front of his truck but were struck by another car, was a matter for the jury. *Armstead v. Holbert*, 122 SE2d 43 (W. Va. 1961).

An oft-quoted statement of Judge Cardozo is appropriate for this factual situation: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 NY 236, 239 (135 NE 275, 276). Our Supreme Court concurs: "[I]t is hornbook tort law that one who undertakes to warn the public of danger [or lack of danger] and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." *Indian Towing Co. v. United States*, 350 U. S. 61, 64 (76 SC 122, 100 LE 48).

There is one Georgia statute that also gives us direction. Under our Uniform Rules of the Road, the General Assembly has given the guidance that "[t]he *signals provided for in subsection (b)* of Code Section 40-6-124 ["signals by hand and arm or signal lamps"] shall be used to indicate an intention to turn, change lanes, or start from a parked position and *shall not be flashed on one side only* on a parked or disabled vehicle, or flashed *as a courtesy or 'do pass' signal* to operators of other vehicles approaching from the rear." (Emphasis supplied.) OCGA § 40-6-123 (d). Perhaps the Assembly had knowledge of

the confused state of the law in other states as to the gratuitous giving of signals by a motorist to a pedestrian or other motorist, and it is now negligence per se for the operator of a motor vehicle to use his electrical directional signals to indicate it is safe for a following motorist to pass.

In the instant case, it is not contested by evidence of record that defendant's driver gave a visual hand signal to the plaintiff. And, as a result of that signal, plaintiff proceeded into a street that she had theretofore refused to venture and was struck by a car coming from the direction where her vision was obstructed by defendant's truck. From an analysis of the foregoing, we have concluded that a plaintiff relying upon a signal by another to proceed into traffic has the burden of proving: (1) the other driver made a signal to her, (2) that he intended to convey the meaning that the way was clear for her to pass, (3) that there was created a right to rely on the fact that in the gratuitous giving of the signal that the other driver had a duty to exercise ordinary care to see that the way was clear ahead for the plaintiff to pass safely, (4) plaintiff did in fact rely on the other driver's signal, and (5) the other driver's signal was a proximate cause of her being struck.

We cannot determine, as a matter of law, what was the meaning of the signal given plaintiff by the defendant's driver. It could be (1) a motion to get out of the way, or to move on, or proceed, or (2) a yielding of the right-of-way, or (3) notice that it was safe to proceed. We also find that neither could the trial court determine as a matter of law what the signal was intended to convey. It is not for a trial court to determine the intended meaning of a motion by a driver, where the person signaling and the person signaled may reasonably differ as to the meaning and intent of the signal. *Gamet v. Jenks*, supra, p. 164. Further, the question of whether the plaintiff proceeded as a result of the defendant's acts or whether on her own, or whether plaintiff was negligent in not keeping a proper lookout for her own safety, or whether defendant's driver exercised ordinary care before giving a signal which could be interpreted as an approval to proceed, or whether defendant's possible negligence was superseded by an intervening act of negligence of the plaintiff, are questions for the jury. *Sweet v. Ringwelski*, supra.

On motion for summary judgment, the evidence must be construed most strongly against the movant, and the party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence in support of his case. *Eiberger v. West*, 247 Ga. 767, 769 (281 SE2d 148); *Davis v. Dickson*, 232 Ga. 338, 339 (206 SE2d 473). Where movant is a defendant, he has the burden of negating at least one of the essential elements of plaintiff's case (*Vizzini v. Blonder*, 165 Ga. App. 840 (303

SE2d 38)) which would defeat plaintiff's action. *Ham v. Ham*, 230 Ga. 43, 45 (195 SE2d 429). A movant defendant has the burden even as to issues upon which the plaintiff would have at trial. Id. The trial court erred in granting summary judgment to defendant as the defendant did not carry its burden and issues remain for trial.

*Judgment reversed. Carley and Sognier, JJ., concur.*

DECIDED MAY 1, 1985 —
REHEARING DENIED MAY 23, 1985 — ▮▮▮▮▮▮▮▮▮▮

*Thomas W. Tobin, Valer V. Tobin*, for appellant.
*Warner R. Wilson, Jr., Therese S. Barnes*, for appellee.