74398. SOUTHERN BELL TELEPHONE & TELEGRAPH
COMPANY v. ALTMAN.
(359 SE2d 385)

DEEN, Presiding Judge.

On October 25, 1983, Southern Bell Telephone and Telegraph Company (Southern Bell) sponsored an awards banquet at a restaurant, which was attended by Ross Altman, a Southern Bell employee. Alcoholic beverages were served to the Southern Bell employees as part of the meal, and following dinner, more alcoholic beverages were available to the Southern Bell attendees, although at their own expense. Altman, a reformed alcoholic until this night, voluntarily consumed alcoholic beverages during and after the banquet.

At the request of a Southern Bell manager, several of Altman's co-workers kept him at the restaurant for approximately one hour to an hour and a half after dinner, and got him to drink some coffee.

Three co-workers then persuaded Altman to allow them to drive him home. One co-worker drove Altman's truck, followed by the two other co-workers in another vehicle.

After delivering Altman to his home and parking his truck (facing the house), the co-workers started to leave; however, they stopped their car in Altman's driveway when they saw him get into his truck. One co-worker got out of the car and asked Altman what he was doing, and Altman explained that he was only backing his truck into the garage. The three co-workers then waited to see Altman back the truck into the garage, exit the truck, and walk towards the front door of the house. Because it appeared that someone was in the house and that Altman was going into his home, the three co-workers finally left.

However, Altman subsequently got back into his truck and drove away. Later that night he was killed when his truck collided with another vehicle driven by David Satterfield. Altman's widow (individually, as administratrix of Altman's estate, and as next friend of their children) and Satterfield and his wife then commenced this action against Southern Bell. Southern Bell moved for summary judgment, which was denied by the trial court, and this interlocutory appeal followed. *Held*:

1. With regard to the claim asserted by Altman's widow, this matter is controlled by *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716) (1985), wherein the Supreme Court made it clear that the provider of alcoholic beverages is not liable for injuries suffered by the consumer of such beverages. The appellees' argument that Altman's known past alcoholism removes this case from the dictates of *Sutter* is unpersuasive.

2. Under *Sutter*, one who provides alcoholic beverages to a noticeably intoxicated person, knowing that the person will soon be driving a vehicle, may be liable for a third party's injuries caused by the negligence of the intoxicated driver. The provider has a duty not to subject third parties to an unreasonable risk of harm caused by the intoxicated driver. Under the undisputed facts of this case, as a matter of law Southern Bell satisfied its duty to third parties. To hold otherwise would practically impose a duty upon Southern Bell not only of getting Altman safely home, but also of tucking him in bed, locking his bedroom door, and securing the keys to his truck, or of setting up an all-night vigil in swing shifts to make sure he didn't leave. "This would be nonsense. People would laugh at the law if it required any such thing." *Fletcher Guano Co. v. Vorus*, 10 Ga. App. 380, 382 (73 SE 348) (1911). Accordingly, the trial court should also have granted summary judgment for Southern Bell on the claim asserted by the Satterfields.

*Judgment reversed. Banke, P. J., Carley, Sognier, and Benham, JJ., concur. Birdsong, C. J., McMurray, P. J., Pope and Beasley,*

*JJ., dissent.*

BIRDSONG, Chief Judge, dissenting.

I respectfully dissent from the majority opinion on two bases: (1) I cannot concur in the holding that *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716), is controlling, because of the distinguishing facts, and (2) I find a conflict in the evidence as to a material fact, which requires denial of the motion for summary judgment.

1. I find *Sutter* applicable but not controlling, as the present action is distinguishable upon its facts. *Sutter* involved a social host in a private home, serving alcohol to an obviously intoxicated minor. The instant appeal concerns a business host, requiring attendance of its employees at a business banquet, at which it serves alcoholic beverages to a known alcoholic employee, and after observing the effect of the employee's consumption of alcohol, the effectiveness of efforts to discharge its duty of care to the obviously intoxicated employee.

I have found no Georgia precedent involving the duties of an employer who requires its employees to attend a business function, i.e., awards banquet, and provides alcohol to a known alcoholic employee. Other states have distinguished between the duties of (a) a social host who serves alcohol to social guests in a private home, (b) a commercial establishment that sells alcoholic beverages, and (c) a business that hosts a social function, or a business function, and those providers of alcohol sell or give the alcohol to (1) an adult, (2) a minor, (3) an obviously intoxicated adult or minor, (4) a known alcoholic or (5) an obviously mentally retarded individual. See generally 48A CJS 133 et seq., Intoxicating Liquors; 45 AmJur2d 852 et seq., Intoxicating Liquors; Annots. 8 ALR3d 1412; 98 ALR3d 1230. The majority finds no distinction between a social host serving alcohol in a private home and a business host providing alcohol in a commercial establishment, and no difference in the status of the consumer of the alcohol — social guest, business guest, minor, or an alcoholic. I discern a distinction.

Although *Sutter* involved a social host in a private home providing alcohol to an intoxicated minor, the Supreme Court applied a statute (OCGA § 3-3-23) which was enacted by the Legislature to apply to commercial purveyors of alcoholic beverages, i.e., "[t]he businesses of manufacturing, distributing, selling, handling, and otherwise dealing in or possessing alcoholic beverages. . . ." OCGA § 3-3-1. Other states have refused to apply statutory obligations enacted for commercial establishments to social hosts and businesses. *Camille v. Berry Fertilizers*, 334 NE2d 205 (Ill. 1975); *Miller v. Owens-Ill. Glass Co.*, 199 NE2d 300 (48 Ill.App.2d 412); *Edgar v. Kajet*, 389 NYS2d 631 (NY 1976); *Manning v. Andy*, 454 Pa. 237 (310 A2d 75); *DeLoach v. Mayer Elec. Supply*, 378 S2d 733 (Ala. 1979); *Chastain v. Litton*

*Systems*, 694 F2d 957 (4th Cir. 1982); U. S. cert. den. 103 SC 2454; *Behnke v. Pierson*, 175 NW2d 303 (Mich. 1970), see also Annot. 8 ALR3d 1413, § 2 (a). Hence, there is substantial foreign authority regarding the lack of applicability of commercial liquor statutes to private business, and we should not assume that because the Supreme Court applied a commercial statute to a social host serving alcohol to an intoxicated minor, they would reach the same result to a business serving alcohol to a known alcoholic at a business function. In this connection, we should note that the precursor statute to OCGA § 3-3-23 was Code Ann. § 58-1061, and it forbid supplying liquors to "minors, intoxicated persons and habitual drunkards. . . ." See *Keaton v. Kroger Co.*, 143 Ga. App. 23, 24 (237 SE2d 443). The current statutes, OCGA §§ 3-3-22; 3-3-23, have eliminated the proscription referring to a "habitual drunkard." The legislature must have intended to distinguish that category by removing that term from the statutes involving "minors" and "intoxicated persons." Courts have held that attendance of an employee at his employer's business function, in response to the employer's request, at which function the employee became intoxicated, the employee's intoxication was incurred "within the scope of his employment." *Harris v. Trojan Fireworks*, 120 Cal.App.3d 157 (174 Cal. Rptr. 452, 456-457 (1981); see also *Boynton v. McKales*, 294 P2d 733 (Cal. 1956).

Michigan has addressed the issue of liability of a tavern owner who provided alcohol to a known alcoholic, who fell from a bridge and killed himself. The court found the tavern owner liable. *Grasser v. Fleming*, 253 NW2d 757 (Mich. App. 1977). In an earlier case, *Hollerud v. Malamis*, 174 NW2d 626 (Mich. App. 1969), tort liability was imposed upon a liquor licensee who knowingly served alcohol to one known to be addicted to alcohol. In Ohio, the court found a common law cause of action existed against a tavern owner who served alcoholic beverages to a patron who habitually drank to excess, thereby causing his death. *Mason v. Roberts*, 294 NE2d 884 (33 Ohio St.2d 29). A California court held that a bar owner who served alcohol to "a habitual drunkard or an alcoholic [who] had lost the will power to resist the temptation when liquor was offered to him" stated a cause of action against a tavern owner when the alcoholic became so intoxicated he strangled himself upon his own vomit. *Carlisle v. Kanaywer*, 101 Cal. Rptr. 246 (24 Cal.App.3d 587). See also Anno. 98 ALR3d 1247, § 7 (a). Accordingly, although portions of *Sutter*, supra, are applicable, I do not find it controlling because of a totally different factual situation in the instant action.

2. There is a conflict in the evidence as to a material fact. At the banquet Altman was sitting at the same table as the District Manager, Phil McClendon. Mixed drinks were served to all who requested them during the banquet. William Amos, an employee of the defend-

ant, stated that after the banquet was over, McClendon "had charged the group to please see that anyone that needed help to get home, got home safely. . . . I took it that he meant Mr. Altman. The reason being, Mr. Altman was the only one that appeared to be intoxicated. . . . Because Mr. Altman was sitting directly around the table from Mr. McClendon. Mr. McClendon had a view of what was going on. Mr. McClendon is a very observant man, and I'm sure he saw the situation." Altman was driven home by three Southern Bell employees (Amos, Hance, and Tucker), carrying out the instructions of their employer. Hance said he drove Altman's pickup truck home, and parked it "facing . . . the garage." They got out of the truck and talked "for five or ten minutes." Then the employee got in the car with the other employees and left. After they had driven down the street, "[w]e realized we had made an incorrect turn leaving the house. We drove down the street a short way, turned around, and drove back toward Altman's house . . . we saw Altman in his truck. We decided to stop and be sure [he] was not leaving. . . . We pulled into the driveway or across the end of the driveway and stayed there three to five minutes. . . . I saw Altman back the truck into the garage. Afterwards, the light went out. The garage was dark when [we] drove away."

Amos said he followed Altman's truck to his house. Hance parked the truck, went around the truck and gave the keys to Altman. Hance and Altman came to his car and Altman shook his hand. Hance got in his car and they started to leave. As they were leaving, they saw Altman get back into his truck and they stopped. Hance got out of the car and went back to Altman's truck. "Altman backed his truck about halfway into the garage and then got out and walked toward the house." After they left, he did not drive back past Altman's home.

Mrs. Altman stated that she was home the evening of the awards dinner. She heard her husband's truck come into their driveway and saw a car parked in the driveway. "Within a few minutes my husband's pickup truck left. During all that time I never heard the truck's diesel engine turned off." According to two of defendant's employees, the truck's engine was turned off twice and they remained there "five or ten minutes" the first time they stopped and "three to five minutes" the second time they stopped. One employee says they stopped once and one employee says they stopped twice. The third employee's testimony was not presented.

The credibility of the two employees is in issue. Their testimony did not agree with each other and Mrs. Altman's testimony differed from both of them. The three employees were attempting to carry out the instructions of their supervisor, after the district manager had observed the result of providing alcohol to a known alcoholic employee. Mrs. Altman stated that her husband did not want to attend, but

"felt that he had to go because of the insistence of his superiors." Amos testified that "[i]t was a business etiquette that we attend it, as far as I was concerned." Hence, the employer attempted to remedy a situation wherein its conduct had caused the intoxication of a known alcoholic employee by directing its employees to see the intoxicated employee "safely home." The affidavits of two of those employees, after learning of Altman's death, do not agree as to the extent of their efforts to see the intoxicated employee "safely home" as per directions of their supervisor.

I cannot agree with the majority's conclusion that "[u]nder the undisputed facts of this case, as a matter of law Southern Bell satisfied its duty to third parties." From the facts quoted above, we have three different versions of what actually occurred at Altman's home and this places in issue the credibility of those witnesses. A jury alone can judge credibility of witnesses. *Ginn v. Morgan*, 225 Ga. 192 (1) (167 SE2d 393); *Blue v. R. L. Glosson Contracting*, 173 Ga. App. 622, 624 (327 SE2d 582). Where credibility of the witnesses is in issue, it is error to grant summary judgment. *Smith v. Sandersville Prod. Credit Assn.*, 229 Ga. 65, 67 (189 SE2d 432); *Columbia Drug Co. v. Cook*, 127 Ga. App. 490, 492 (194 SE2d 286). At the heart of the summary judgment procedure is the axiom that there must be no substantial issue as to any material fact, and this lack of conflict permits the trial court to apply applicable standards of law which define the legal rights and obligations of the parties, without resort to trial on the conclusively established, indisputable facts. I cannot concur with the majority's conclusion that the facts are "undisputed" as to the extent of the employees' efforts to discharge the responsibility of their employer, when the majority accepts as "fact" one of three versions of the extent of those employees' corrective actions.

Further, at issue is the alleged negligence of the employer in providing alcohol to the known alcoholic employee and whether it discharged its duty after discovery of the intoxication of that employee, knowing that such intoxicated alcoholic employee would be driving home. Amos testified to the fact that Mr. McClendon observed the intoxication of Altman at his table prior to the termination of the meeting. The majority finds *Sutter* applicable to this appeal. *Sutter* held: " 'We think it evident that the service of alcoholic beverages to an obviously intoxicated person by one who knows that such intoxicated person intends to drive a motor vehicle creates a reasonably foreseeable risk of injury to those on the highway.' " (Emphasis deleted.) 254 Ga. at 196. Here, the known alcoholic was visibly intoxicated at the awards banquet — sufficiently intoxicated to invoke the directions of the district manager that company employees see that person "safely home." This factual predicate raises two issues of law, the extent of negligence of the employer in providing alcohol to a

known alcoholic, at a business function, and the discharge of its duty of care after discovery of the effect of its alleged negligence. The majority opinion holds, "as a matter of law Southern Bell satisfied its duty to third parties." In other words, the majority has settled not only issues of fact and credibility, but questions of negligence, due care, foreseeability, and satisfaction of the reasonable man standard "as a matter of law" on a motion for summary judgment at the appellate level. "The only human resolution of such conflicts can, under our jurisprudence, be made by a jury who alone can impeach, who alone can judge credibility, and who alone can decide issues of fact." *McCurry v. Bailey*, 224 Ga. 318, 320 (162 SE2d 9). "In resolving this question, we must start with the accepted standard of law that issues of negligence and diligence, including related issues of lack of ordinary care for one's safety or lack of ordinary care in failing to foresee or observe the negligence of another, are ordinarily not susceptible of summary adjudication (cit.) and unless only one conclusion is permissible (cits.), the issue should be resolved by the jury" (*Hester v. Baker*, 180 Ga. App. 627, 630 (349 SE2d 834)), "and even where there is no dispute as to the facts, it is usually for the jury to say whether the conduct in question met the standard of the reasonable man." *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 836 (331 SE2d 899); accord *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237 (227 SE2d 336); *James v. Sears, Roebuck & Co.*, 140 Ga. App. 859 (232 SE2d 274). Thus, even if it could be determined from the conflict in the evidence as to what the conduct was of the three men who drove Altman home, whether that conduct met the reasonable man standard is for the jury. Even assuming there was no initial duty to provide care for the intoxicated employee, the employer having undertaken to provide such care was required to perform it in a nonnegligent manner. *Atlanta Center v. Cox*, 178 Ga. App. 184, 185 (341 SE2d 15); accord *Cunningham*, supra at 834-839; *Mixon v. Dobbs Houses*, 149 Ga. App. 481, 483 (254 SE2d 864); Restatement, Torts 2d §§ 324, 324A; Prosser, Law of Torts (4th ed.) 343, § 56. "Where the evidence is susceptible of more than one inference, it is the jury rather than the trial judge who should make the determination." *Georgia Power Co. v. Knighton*, 169 Ga. App. 416, 417 (312 SE2d 872).

3. This is a first impression issue, i.e., the obligation of a business, at a business function, to a known alcoholic employee, in providing him with intoxicants to the extent that he becomes intoxicated to a degree that he is apparently incapable of properly caring for himself, and if there is an obligation or duty imposed on the employer, is that duty discharged by driving the man home and leaving him in possession of his keys and his car outside of his house? The majority finds these issues so well-settled, that even in view of conflicts of fact

in the statements of two people who drove the intoxicated employee home, and a conflict between those versions and a third witness, that all issues can be properly determined by an appellate court on summary judgment, after refusal of the trial court to grant summary judgment. The resolution of the conflicts in the evidence, the credibility of the witnesses, the issues of negligence, foreseeability, discharge of a duty of care, and determination of whether the employer's employees' conduct met the reasonable man standard, are questions for resolution by a jury.

I, therefore, respectfully dissent from the majority opinion. I am authorized to state that Presiding Judge McMurray, Judge Pope and Judge Beasley join in this dissent.

DECIDED JUNE 19, 1987 —
REHEARINGS DENIED JULY 10, 1987 — 

*R. Phillip Shinall III, Harris R. Anthony,* for appellant.
*Ronald C. Harrison, Robert E. Richardson, Patrick J. Gibbs,* for appellee.