## 73627. GINN v. RENALDO, INC.
### (359 SE2d 390)

POPE, Judge.

Plaintiff Ginn brought this action against defendant Renaldo, Inc. d/b/a Baker Street to recover damages for injuries received at defendant's nightclub. This appeal arises from a directed verdict in favor of defendant at the close of plaintiff's case.

The facts of record, construed most strongly in favor of plaintiff, showed that on the evening in question plaintiff became "silly drunk" at defendant's nightclub and was asked by several patrons and the manager to leave the premises. He initially declined, but upon arrival of the police he voluntarily left the premises, escorted by the manager and an unidentified male patron. While talking with the police in the nightclub's parking lot, plaintiff realized that he had left his jacket inside. Upon his attempt to reenter the premises and retrieve the jacket, he was met at the door by the manager and an unidentified male patron. (Plaintiff was unable to recall if this patron was the same one who had earlier escorted him out.) He repeatedly attempted to persuade the manager to admit him so that he could retrieve his jacket, but she steadfastly refused. Suddenly and without warning, the patron pushed plaintiff, who lost his balance and fell backward. Plaintiff testified, "[T]o break my fall I put my hand against the door frame and he slammed the door on my hand and I pushed it back

open with my right hand and before I could get my right hand out of the door he slammed it again and held it shut and was obviously pushing with all his might because it hurt very much and I started screaming at him to open the door, that he had my hand in the door and to let the door open and I would get my hand out, and he held it for several minutes . . . pushing with all his might. . . ."

1. In our view the linchpin issue in this case is the question of agency. That is, did plaintiff present sufficient evidence to prove a principal/agent relationship between defendant and the unidentified patron who allegedly committed the subject tort? See OCGA § 51-2-1 (a); see generally *Carter v. Kim*, 157 Ga. App. 418 (277 SE2d 776) (1981). "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. There is no assertion of agency by express agreement, so we will confine our discussion here to agency by implication and agency by ratification.

"Proof of agency and of the nature of the agency may be made by showing circumstances, apparent relations, and the conduct of the parties. . . ." *Martin & Hicks v. Bridges & Jelks Co.*, 18 Ga. App. 24 (2) (88 SE 747) (1916). However, "where the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such an agency exists. [Cits.]" *Shivers v. Barton & Ludwig*, 164 Ga. App. 490, 491 (296 SE2d 749) (1982). A review of the record in this case persuades us that the unidentified person alleged to have caused plaintiff's injuries was merely an individual patron of defendant's nightclub. Although this person was at the door of the nightclub with the manager, there is no evidence that he had been requested to assist the manager in dealing with plaintiff or that he was in any way concerned with or responsible for the security of the nightclub. The testimony of defendant's president — that on occasion patrons, "without asking them to do anything from me or any of my employees," intercede in altercations or when other patrons become rowdy or unruly and assist in escorting the troublemakers out of the nightclub — provides no evidence of agency and, in any event, is irrelevant to the alleged agency relationship in the case at bar. See OCGA § 24-2-2; *Conyers v. Ford*, 111 Ga. 754 (2) (36 SE 947) (1900). We accordingly find no probative evidence of agency by implication.

Likewise, we find no record evidence of agency by ratification. " 'Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if origi-

nally authorized by him.' [Cits.]" *Greene v. Golucke*, 202 Ga. 494 (1) (43 SE2d 497) (1947). However, "[t]he doctrine of ratification is not applicable against a principal as to the act of a third person who did not assume to act in the name of or under the authority of the principal. [Cits.]" *Morgan v. S. C. Johnson & Son*, 72 Ga. App. 444, 446 (33 SE2d 915) (1945); *Greene v. Golucke*, supra at (2). The evidence in this case shows that the unidentified patron acted in an individual capacity and not as one holding himself out as acting in the name of or under the authority of defendant. Accord, e.g., *Davis v. Stone Mtn. Mem. Assn.*, 179 Ga. App. 486 (2) (347 SE2d 317) (1986); *de la Gonzalez v. Krystal Co.*, 173 Ga. App. 574 (3) (327 SE2d 546) (1985); see also *Ogletree v. MacDougald Constr. Co.*, 45 Ga. App. 128 (1) (163 SE 320) (1932).

2. Since the holding in Division 1 is dispositive of the case, plaintiff's remaining enumerations of error need not be considered. Also, although the trial court based its decision on grounds other than those discussed above, " '[a] correct decision of a trial court will not be reversed, regardless of the reasons given therefor.' [Cit.]" *Tony v. Pollard*, 248 Ga. 86, 88 (281 SE2d 557) (1981); *White Repair &c. Co. v. Ga. Roofing &c. Co.*, 152 Ga. App. 92 (262 SE2d 164) (1979).

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur. Deen, P. J., also concurs specially.*

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion, which decides the case on the question of agency, additional comments should be made with regard to the direction of the verdict in favor of the defendant.

Many of the customers of the nightclub were young people 18, 19, and 20 years of age attracted by live bands and the pushing of strong drinks; the nightclub to some extent catered to a young, "punk-rock"-type clientele. Compare *Levangie v. Dunn*, 182 Ga. App. 439 (356 SE2d 88) (1987), where music, drink, drugs, porn photos, and headbanging were part of the attraction. In the instant case, the plaintiff had already had five or six drinks before he got to the nightclub, "where beer and other species of 'fire water' are dispensed." *Harrell v. State*, 34 S2d 241, 242 (Fla. 1948). Upon his arrival at the bar, he consumed another beer and became "silly drunk," or "skunk drunk," as well as bombed on "two B-52 shooters."

The first Chief Judge of our court, Benjamin H. Hill, spoke on this subject and observed in a related-type case many years ago that three-fourths of all crime is due directly or indirectly to the excessive use of intoxicants. Chief Judge Hill eloquently observed: "The facts of this case present another of the daily occurring instances showing the monstrous and measureless evil of intoxicating liquors. This hy-

dra-headed and remorseless monster, with ceaseless and tireless energy, wastes the substance of the poor, manufactures burdensome taxes for the public, monopolizes the valuable time of the courts, fills jails, penitentiaries, and asylums, ruins homes, destroys manhood, terrorizes helpless women and innocent children, baffles the church, and mocks the law, and, answering its inexorable demands, 'each new morn new widows mourn, new orphans cry, new wrongs strike Heaven in the face.'" *Langston v. State*, 10 Ga. App. 82 (72 SE 532) (1911). Unfortunately, the passage of time may have borne out the verity of Chief Judge Hill's attitude, as those observations seem even more applicable in our present state of society.

Articulate appellate advocate arduously argues that where one becomes noticeably intoxicated and inebriated and rough, rude, riotous and rowdy as a result, he is entitled to perhaps a higher standard of care than the other, more sober patrons. See *Southern Bell Tel. &c. Co. v. Altman*, 183 Ga. App. 611 (359 SE2d 385) (1987), where the employer had several co-workers take another, inebriated employee home following an employer-sponsored banquet. In that case, the employer satisfied its duty to the intoxicated employee, although the employee subsequently left home and was killed in an automobile collision. In the instant case, we are concerned with the standard of care of a commercial owner. Appellant argues that one who is drunk is no less entitled to protection than one who is sober, relying on a venerable California case, *Robinson v. Pioche, Bayerque & Co.*, 5 Cal. 460 (1855). In *Robinson*, an intoxicated person fell into a hole in the sidewalk, and the court ruled, "A drunken man is as much entitled to a safe street as a sober one, and much more in need of it." Id. at 461.

In the case *sub judice*, we don't have a drunk falling into a hole in the sidewalk, but a drunk having a door slammed on his hand as he was wrongfully attempting to re-enter an establishment from which he had justifiably been ejected. When the plaintiff first arrived at the nightclub, of course, he was an invitee. Thereafter, a micro-adaptation or mini-evolution occurred, gradually turning him into a licensee and then into a trespasser. Because of his behavior, the police were eventually called and took custody of him. When he later got away from the police, he again went back into the bar; at this point in time, he was a trespasser. He may have a cause of action as in *Robinson v. Pioche, Bayerque & Co.*, supra, but it would be against the unidentified patron who slammed the door on his hand. The bar satisfied its duty to him, as did the employer in *Southern Bell Tel. &c. Co. v. Altman*, supra, and, therefore, the trial court did not err in directing a verdict in favor of appellee.

DECIDED JUNE 30, 1987.

*Michael M. Calabro*, for appellant.
*Thomas S. Carlock, Johannes S. Kingma*, for appellee.