## 32000. DICKSON v. DICKSON.

PER CURIAM.

Gary L. Dickson appeals from the grant of a divorce to his wife, Annamaria B. Dickson.

1. The wife has filed a motion to dismiss the appeal on the ground that the grant of divorce on the pleadings, which leaves other issues for decision, is an interlocutory order which cannot be appealed without following the statutory procedure for interlocutory appeals, citing *Carr v. Carr,* 238 Ga. 197 (232 SE2d 69) (1977).

The present case is distinguishable from the *Carr* case. The wife attached her affidavit to her motion for judgment on the pleadings, and the husband filed an affidavit in opposition to the motion. The trial judge stated in his order that the wife had reaffirmed under oath that her marriage was irretrievably broken. Code Ann. § 81A-112 (c) (Ga. L. 1966, pp. 609, 622; 1967, pp. 226, 231; 1968, pp. 1104, 1106; 1972, pp. 689, 692, 693) provides that if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. An order granting summary judgment on any issue is subject to review by direct appeal. Code Ann. § 81A-156 (h) (Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238; 1975, pp. 757, 759).

2. The wife sought a divorce on the ground that the marriage was irretrievably broken. The husband by counterclaim sought a divorce on the grounds of cruel treatment and adultery. The trial judge granted a divorce on the ground that the marriage was irretrievably broken.

In *Loftis v. Loftis,* 236 Ga. 637, 639 (225 SE2d 685)

(1976), it was held: "If one party asserts that the marriage is irretrievably broken, and the other party asserts that he or she is entitled to a total divorce, the trial judge has the power to grant a divorce to both parties without fixing or placing fault on either party. Code § 30-116." See also *McCoy v. McCoy,* 236 Ga. 633 (225 SE2d 682) (1976).

The trial judge did not err in granting the wife's motion for judgment on the pleadings, which was converted into a motion for summary judgment. However, under the stated pleadings the trial court was authorized to grant the divorce on the pleadings but such judgment would not have been appealable. *Carr v. Carr,* supra.

3. The public policy of the state to hinder facility in the procurement of divorces has been amended to the extent that Code Ann. § 30-102 (13) (Ga. L. 1973, p. 557) facilitates the procurement of divorces.

4. There is no merit in the contention that the grant of the divorce on the ground that the marriage was irretrievably broken violates the due process, equal protection, privileges and immunities, right to the courts, and right to trial by jury clauses of the State and Federal Constitutions.

It is argued that Code Ann. § 30-102 (13) violates due process because it is too vague and indefinite, and because it denies an opportunity for a party to be heard before a jury where disputes exist over factual issues.

In *Harwell v. Harwell,* 233 Ga. 89, 91 (209 SE2d 625) (1974), this court defined an "irretrievably broken" marriage as one "where either or both parties are unable or refuse to cohabit and there are no prospects for a reconciliation." Therefore this court has found the statute capable of definition and application.

We find no merit in the contention that under previous decisions of this court a party may be denied the opportunity to be heard on the question of whether or not the marriage is in fact irretrievably broken. All these decisions involved the application of the CPA to the "irretrievably broken" ground for a divorce as defined by this court in *Harwell,* supra. In a no fault divorce, the assignment of blame is irrelevant; the issue is a search for the realities of the marital situation, i.e., whether the marriage has ended in fact. If this fact is undisputed by

the pleadings, a judgment may issue upon the pleadings. Even if disputed by the pleadings, it can be granted on motion for summary judgment where the movant pierces the pleadings by showing there is no genuine issue on any material fact and there is no valid counter showing by the opposing party. If there is an issue of fact, either party is entitled to a jury trial.

No fault divorce judgments on the pleadings have been granted where one party sought a divorce on the ground that the marriage was irretrievably broken and the other party counterclaims for divorce on the same or any other ground. The basis for these decisions is that the pleadings show that there is no dispute over the fact that the marriage has ended in fact. See *Friedman v. Friedman,* 233 Ga. 254 (210 SE2d 754) (1974); *Marshall v. Marshall,* 234 Ga. 393 (216 SE2d 117) (1975); *Whitmire v. Whitmire,* 236 Ga. 153 (223 SE2d 135) (1976); and *Loftis v. Loftis,* 236 Ga. 637, supra.

Under the same principles, a no fault divorce may be granted by summary judgment where the movant seeks a divorce on the irretrievably broken ground and pierces the opposing party's pleadings, which deny that the marriage is irretrievably broken. As in any summary judgment, this is accomplished by a supporting affidavit, made on personal knowledge, setting forth facts which would be admissible as evidence in the trial of the case, showing that there is no genuine issue on these facts. Code Ann. § 81A-156 (e). "Ultimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief,' cannot be utilized on a summary judgment motion." 10 Wright & Miller, Federal Practice and Procedure, 695-696, § 2738 (1973). "Opinion testimony of the ultimate fact to be decided in a case is never sufficient to authorize a summary judgment." *Life &c. Ins. Co. v. Moore,* 125 Ga. App. 485, 486 (188 SE2d 118) (1970). See also *Ginn v. Morgan,* 225 Ga. 192 (167 SE2d 393) (1969) and *Harrison v. Tuggle,* 225 Ga. 211 (167 SE2d 395) (1969).

If the movant's affidavit sets forth *evidentiary facts* showing refusal to cohabit and the lack of any prospects for reconciliation, summary judgment will be granted unless there is an opposing affidavit showing that the

movant has not refused to cohabit or has shown prospects for reconciliation. It should be noted that opinion evidence can be sufficient to preclude the grant of summary judgment. *Harrison,* supra, 213; *Word v. Henderson,* 220 Ga. 846 (142 SE2d 244) (1965). If respondent files an affidavit expressing respondent's opinion that the marriage is not irretrievably broken and that there are genuine prospects for reconciliation, then summary judgment should be denied.

*Manning v. Manning,* 237 Ga. 746 (229 SE2d 611) (1976), a plurality-memorandum opinion involving summary judgment is disapproved and will not be followed in the future.

The decisions granting a no fault divorce on the pleadings or motion for summary judgment under the CPA are judicial determinations that the marriage is truly at an end. "The purpose of the Summary Judgment Act . . . is to eliminate the necessity for a trial by jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442) (1962). See also *Crutcher v. Crawford Land Co.,* 220 Ga. 298 (138 SE2d 580) (1964). "A party against whom summary judgment has been granted is in the same position as if he suffered a verdict against him . . . [It] is an adjudication on the merits of the case." *Sumner-Minter Assoc. v. Giordano,* 231 Ga. 601, 604 (203 SE2d 173) (1973).

The General Assembly has a right to specify the grounds on which a divorce may be granted, and there is no merit in the contention that the grant of a divorce to the wife without a jury trial violates the constitutional prohibition against the passage of laws impairing the obligations of contracts.

5. To the extent that Code § 30-102 (13) is in irreconcilable conflict with other statutes, it must be held to amend those statutes by implication.

6. It is asserted that the trial court's action in the judgment appealed from was contrary to the intent of the General Assembly in the enactment of Code Ann. § 30-102

(13). This court has interpreted the intent of the General Assembly in the enactment of the thirteenth ground for obtaining a divorce, and the trial judge has followed that interpretation except as held in the following division.

7. The husband contends that the trial judge erred by awarding a divorce to the wife only, rather than to both the wife and the husband.

In *Herring v. Herring,* 237 Ga. 771, 772 (229 SE2d 756) (1976) it was held: "Since a finding of irretrievable brokenness is one not requiring a showing of fault, it follows that a divorce granted on this ground should be granted to the parties equally." See also *Anderson v. Anderson,* 237 Ga. 886, 890, supra; *Anders v. Anders,* 238 Ga. 79 (231 SE2d 64) (1976).

It was proper to grant the divorce, but the trial judge is directed to issue a new order in which the divorce is granted to both parties.

*Judgment affirmed in part and reversed in part. Undercofler, P. J., Jordan, Hall and Hill, JJ., concur. Nichols, C. J., and Ingram, J., concur specially.*

ARGUED FEBRUARY 16, 1977 — DECIDED APRIL 21, 1977.

*Moffett, Henderson & Bishop, F. Glenn Moffett, Jr., David H. Lanner,* for appellant.
*Peek & Whaley, J. Corbett Peek, Jr.,* for appellee.

NICHOLS, Chief Justice, concurring specially.

Prior to the addition of the so-called "no fault" ground to Code § 30-102, and the decisions construing such statute, the divorce law of Georgia was well settled.

In the first decision of this court construing this amendment, it was held: "An 'irretrievably broken' marriage is one where *either* or both parties are unable or *refuse* to cohabit and there are no prospects for a reconciliation." (Emphasis supplied.) *Harwell v. Harwell,* 233 Ga. 89, 91 (209 SE2d 625) (1974).

In *McCoy v. McCoy,* 236 Ga. 633 (225 SE2d 682) (1976), it was held: "We return to what was said in *Harwell v. Harwell,* supra, 233 Ga. 89, 91: 'An "irretrievably broken" marriage is one where *either* or

both parties are unable or *refuse* to cohabit and there are no prospects for a reconciliation.' (Emphasis supplied.) In *Harwell,* the jury granted the wife a divorce over the husband's opposition. Implicit in that case is that the husband opposed the divorce; i.e., he felt that the marriage was not irretrievably broken.

"In the case before us, we make explicit that which was implicit in *Harwell,* to wit: where one of the parties to a marriage refuses to cohabit with the other and testifies that the marriage is irretrievably broken, the fact that the other party maintains hope for a reconciliation will not support a finding under *Harwell* that there are 'prospects for a reconciliation.' Just as it takes two consenting parties to make a contract, it takes two consenting parties to make a reconciliation. Just as one party cannot make a contract, one party cannot make a marriage or a reconciliation thereof. If the General Assembly had intended that the thirteenth ground for divorce be consensual, it would have provided that 'The parties agree that the marriage is irretrievably broken.' "

In *Manning v. Manning,* 237 Ga. 746 (229 SE2d 611) (1976), this court in a per curiam opinion reaffirmed the holdings in *Harwell* and *McCoy* and expressly held that an affidavit in support of the motion for summary judgment in the following language was sufficient to pierce the allegations of pleadings which denied that the marriage was irretrievably broken: " 'The separation between us is complete and permanent. I am unwilling to live with the defendant (wife) at the present time. I am unwilling, and I refuse, to live with her at any time in the future. There is no possibility whatever of a reconciliation ever taking place between us. The marriage . . . is irretrievably broken.' " Three Justices concurred fully in the majority opinion, another wrote a special concurrence in which he stated, after quoting from *Harwell* and *McCoy:* "Under the verified pleadings and the affidavits of record in this case by both parties, there are no real or practical prospects for a reconciliation. Stripped of all conclusions that project a mere glimmer of hope at reconciliation, this record eliminates any fact issue on the subject of irretrievable brokenness, and the trial judge correctly granted summary judgment on this issue."

*Manning,* p. 749.

Another Justice, concurring specially in the opinion, stated: "I concur in the judgment not because I think it is right but because it is based on case law decided by a majority of this court and I am bound by it. This court now holds that the mere assertion by one of the parties to a marriage that the marriage is irretrievably broken is sufficient not just to authorize, but to require the grant of a divorce." Id., p. 750.

Now, less than six months later, a majority of this court is overruling the *Manning* decision. Why? Has the law changed? No statute has been enacted authorizing or requiring such change. Was the question on which the present case is being decided overlooked when *Manning* was decided? Hardly, for the dissent there states in part: "The majority in this case . . . hold that where one party wants and sues for a divorce, it may be granted on summary judgment, without a trial, over the opposition of the other party. The rationale of this case is that where one party seeks a divorce, the marriage is irretrievably broken." Id., p. 752.

While I originally had grave doubts if the "no fault" or "irretrievably broken" ground of divorce was intended to change the public policy of Georgia, which had always condemned any action tending to promote the dissolution of marriage, yet, in recognition of the trend in this country of the state's diminishing willingness to be involved in the matter of marriage termination, I could not escape the conclusion that enactment of the "irretrievably broken" ground of divorce by the General Assembly was intended as a change in Georgia's public policy.

It is inconceivable to me that this court should, less than six months after its decision in *Manning,* completely reverse itself on an issue of such importance to the bench, bar and public.

INGRAM, Justice, concurring specially.

I applaud this court's recognition of the con-stitutional dangers created by some of the language in *McCoy,* supra, at p. 634, and then magnified by the holding in *Manning,* supra.

Cases which have considered and upheld the

constitutionality of no-fault divorce statutes in other states have specifically noted that under those statutes there must be a judicial determination that the marriage is truly at an end. See Hopkins v. Hopkins, 540 SW2d 783 (Tex. CCA, 1976); Flora v. Flora, 337 NE2d 846 (Ind. CA 1976); Ryan v. Ryan, 277 S2d 266 (Fla. SC, 1973).

We had reached the point in Georgia where, if one of the parties to a marriage sued for divorce on the ground that the marriage was irretrievably broken, the court performed nothing more than a ministerial duty in approving the divorce complaint. Both parties' status in society had been fundamentally altered from that of "married" to "divorced" without giving one of those parties any real opportunity to be heard. Whatever the parameters of due process may be, it is my opinion that this procedure did not comport with constitutional safeguards. "The right to be heard in matters affecting one's life, liberty or property is one of the essential elements of due process of law." Southern R. Co. v. Town of Temple, 209 Ga. 722, 724 (75 SE2d 554) (1953). In Boddie v. Connecticut, 401 U. S. 371 (91 SC 780, 28 LE2d 113) (1971), the U. S. Supreme Court held that due process of law prohibits a state from denying indigents access to its divorce courts solely because of their inability to pay court costs and fees. The court reasoned that since marriage is of such basic importance in our society and since the state has a monopoly over the means for dissolving that relationship, due process of law requires that any citizen seeking a divorce be given an opportunity to go into court and be heard. The rationale of Boddie requires that in any judicial proceeding involving the termination of a marriage due process means that both parties to the marriage must be given a meaningful opportunity to come into court and be heard.

These constitutional problems were foreseen a long time ago by a judge whose opinions have been considered the birthright and strength of our judicial system, Chief Justice John Marshall of the U. S. Supreme Court. In Trustees of Dartmouth College v. Woodward, 17 U. S. Reports 518, 629 (1819), Justice Marshall had this to say about the constitutional provision that proscribes the impairment of contract obligations: "[It] never has been

understood to embrace other contracts, than those which respect property, or some object of value, and confer rights which may be asserted in a court of justice. It never has been understood to restrict the general right of the legislature to legislate on the subject of divorces. Those acts enable some tribunal, not to impair a marriage contract, but to liberate one of the parties because it has been broken by the other. When any state legislature shall pass an Act annulling all marriage contracts, or *allowing either party to annul it without the consent of the other, it will be time enough to inquire, whether such an Act be constitutional."* (Emphasis supplied.)

That time had come in Georgia after *McCoy* and *Manning*. *McCoy* can be saved because of the facts of that case, but *Manning* is wrong. There was an issue in *Manning* and that issue should have been resolved by the factfinder. I think the court has reached a wise and just decision in determining not to follow *Manning* in future cases.