75287, 75288. DIVECCHIO v. MEAD CORPORATION (two cases).

(361 SE2d 850)

DEEN, Presiding Judge.

On August 21, 1985, William Troutman, who was the general manager of Mead Corporation's two corrugated box plants in Atlanta and Covington, met five other Mead employees at a restaurant/bar to celebrate the impending marriage of another employee. Mead Corporation subsequently reimbursed one of the employees for the tab. Troutman, who had four drinks of Scotch during the hour and a half that he was at the bar, admittedly was "high" or feeling a "buzz" when he left. On his way home, driving a company car, Troutman fell asleep at the wheel and ran over Angelo and Velma Divecchio as they were walking their dog. Each filed individual actions against Troutman and Mead Corporation, and each appeals from the trial court's grant of summary judgment for Mead Corporation. *Held*:

1. In *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716) (1985), the Supreme Court decided that OCGA §§ 3-3-22 and 3-3-23 were designed to protect third parties from the dangers of providing alcoholic beverages to noticeably intoxicated persons and minors, respectively. In *Sutter*, the Supreme Court held that the third parties had a cause of action against one who had provided alcoholic beverage to a noticeably intoxicated minor, knowing that the minor would soon be driving a vehicle. It is clear from *Sutter* that a similar cause of action would lie where one provides alcoholic beverage to a noticeably intoxicated adult who is about to drive a vehicle. In both instances, the provider has a duty not to subject third parties to an unreasonable risk of harm caused by such an intoxicated driver. See *Sou. Bell Tel. &c. Co. v. Altman*, 183 Ga. App. 611 (359 SE2d 385) (1987).

The first crucial question in this case is whether Mead provided alcoholic beverages to Troutman. As a matter of literal fact, at the time of the alcohol consumption, Mead was not the provider, but it is undisputed that Mead ultimately reimbursed one of the salesmen who included the bar tab in his company expense voucher. It appears from the record, however, that the salesman "disguised" the bar tab as an entertainment/dinner expense to promote sales with a particular company. There is no other evidence showing that Mead, in approving reimbursement of the "entertainment" expense, had any knowledge of the real nature of the expense, and nothing from which one may infer such knowledge. Under these circumstances, where the salesman in effect perpetrated a fraud upon his employer, there was no basis for finding that Mead had provided alcoholic beverages to anyone.

2. The appellants also contend that Troutman was within the scope of employment when he ran over the appellants, since he was driving a company car and Mead reimbursed him for most of the gas-

oline he purchased, thus making Mead responsible under the doctrine of respondeat superior. Under the facts of this case and the present state of the law, however, we disagree.

Generally, when an employee is involved in a collision while operating his employer's automobile, a presumption arises that he was acting within the scope of his employment. *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776 (257 SE2d 186) (1979). However, when confronted by uncontradicted testimony of the defendant and/or employee that at the time of the collision the employee was on a purely personal mission, in order to survive the defendant's motion for summary judgment, the plaintiff must show some other fact which indicates that the employee was acting within the scope of employment; further, when the "other fact" is shown by circumstantial evidence, that evidence must be sufficient to support a verdict. Id. at 780; see also *Fred A. York, Inc. v. Moss*, 176 Ga. App. 350 (335 SE2d 618) (1985).

In the instant case, at the time of the collision, Troutman was driving home for the evening, a purely personal mission absent some other fact. The appellants attempted to show that Mead not only furnished Troutman the vehicle, but also apparently reimbursed him for gasoline expenses incurred during personal use of the car, and then included this reimbursement as a business expense in determining its tax liability. If Mead represented such reimbursement of personal gasoline expenses as business expenses for tax purposes, the appellants argue, Mead should regard Troutman's personal use of the car as company business.

Troutman's deposition testimony indicates that he did consider much of his drive-time to and from work and home to be company business for purposes of determining who should pay for the gasoline, due to his having to travel back and forth from the two Mead plants. However, although the amount of personal mileage claimed by Troutman on the expense vouchers was but a small fraction of the total mileage, only cumulative compilations of the mileage were required, and not any detailed account of the personal use. In short, nothing in the expense vouchers correlates the reimbursement with the nature, i.e., company or personal, of the mileage. This evidence simply would not support a verdict that at the time of the collision, Troutman's driving home after an evening of carousing with subalterns was within the scope of his employment. Accordingly, the trial court properly denied summary judgment as to this theory of recovery as well.

Assuming that the gathering at the restaurant/bar had been a matter of company business, i.e., Mead approved of such activity because it furthered the business purpose of improving working relationships or employee morale, the doctrine of respondeat superior is still unavailing to the appellants. In a whole court decision, this court

has previously rejected application of that doctrine where an employee got intoxicated "wining and dining" prospective customers and then was involved in a collision when he drove home. *Healthdyne v. Odom*, 173 Ga. App. 184 (325 SE2d 847) (1984). In that case, this writer dissented, favoring adoption of the approach employed in *Chastain v. Litton Systems*, 694 F2d 957 (4th Cir. 1982), which consisted of a three-prong analysis: (1) whether the employee's consumption of alcohol was within the scope of employment because it furthered a business purpose; (2) whether the employee negligently drank too much and became intoxicated; and (3) whether that employee's intoxication continued until the collision and was the proximate cause of the collision. However, this court is bound by the majority opinion in *Healthdyne*, and not the dissent.

   *Judgments affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED OCTOBER 2, 1987.

*George E. Duncan, Jr.*, for appellants.
*Stephen L. Cotter*, for appellee.