77117. WHELCHEL et al. v. LAING PROPERTIES, INC. et al.
77118. E & G ENTERPRISES, INC. v. WHELCHEL et al.
(378 SE2d 478)

BIRDSONG, Judge.

Appellants appeal the trial court's grant of summary judgment to Laing Properties, Inc. (hereinafter Laing) and the grant of partial summary judgment to E & G Enterprises, Inc. ("E & G") as to the issue of respondeat superior. Cross-appellant/appellee E & G cross-appeals the denial of its motion for summary judgment. These appeals involve issues of so-called "dram shop" liability.

Appellee Sheliah Warren was employed by appellee E & G as one of the store managers of an E & G dry cleaning business. In December 1985, E & G hosted an office "Christmas party" at a banquet room of a Hilton Hotel operated by appellee Laing.

Employees were not required to attend the party, although the appellee Warren attended at least in part because of her personal sense of responsibility as a manager. The Hilton Hotel was not serviced by any form of public transportation; however, taxi service was available. Appellee Warren drove her car to the party. The party was held from 2:00 p.m. to 5:00 p.m., although the appellee Warren did not depart until between 5:30 p.m. and 6:00 p.m. The E & G hosted party included an "open bar." As a matter of routine business practice the Hilton Hotel posted a sign during parties, encouraging those who might be driving to spend the night with the hotel instead for $45. Appellee Laing had offered E & G the option to contract for hospitality rooms as part of the furnished party facilities, but appellee E & G declined the option.

As appellee Warren was leaving the party, she was invited by the vice-president of E & G and his wife to attend another private party being hosted by a friend of the vice-president. This party was not related in any way to the dry cleaning business. Appellee Warren voluntarily elected to go to the second private party, although she testified in her deposition both that she "liked . . . to go" and that she "probably was indecisive because [she] really didn't want to go, but it's your boss."

Appellee Warren was at the second party less than an hour. She had one drink at this party, which may or may not have contained alcohol. Appellee Warren offered to drive another employee back to the Hilton Hotel on her way home. She ran through a stop sign en route and killed the driver of another automobile. Eyewitness testimony indicates that appellant was traveling at an apparently high rate of speed at the time. She smelled strongly of alcohol, could not focus her eyes, and would overreach the steering wheel. Blood/alcohol tests were taken of appellee Warren at 10:00 p.m. and 11:00 p.m. Test results were "blood is positive for ethyl alcohol" at 0.22 grams percent

and 0.20 grams percent respectively. A urine specimen also tested positive for the presence of marijuana.

Appellants subsequently filed suit for wrongful death against appellees Warren, Laing and E & G. *Held*:

## Case No. 77118 (Cross-Appeal)

1. Cross-appellant/appellee E & G asserts that the trial court erred in denying its motion for summary judgment because under the attendant circumstances it owed no duty to plaintiffs under Georgia law. We disagree.

OCGA § 3-3-22 expressly provides that "[n]o alcoholic beverage shall be sold, bartered, exchanged, given, provided, or furnished to any person who is in a state of noticeable intoxication." The term "provide" means to make, procure, or furnish for future use; to prepare; to supply; to afford; to contribute. Black's Law Dictionary (5th ed.), p. 1102. It also means to make ready; to make available. The American Heritage Dictionary (2d Col. ed.), p. 997. The acts of E & G, including contracting with appellee Laing to obtain and pay for its services in actually furnishing and giving alcoholic beverages to guests at the E & G *hosted* party, fall at least within the act of providing alcohol as contemplated by the legislature in enacting OCGA § 3-3-22.

In *Sutter v. Hutchings*, 254 Ga. 194, 197 (327 SE2d 716), the Supreme Court pertinently stated, "in view of risks involved and the General Assembly's efforts to control drunk driving *for the protection* not only of those drivers but *others* on the highways, we conclude that these statutory duties protect third parties as well as those noticeably intoxicated and under 19. OCGA §§ 3-3-22; 3-3-23, supra, provide the duty, not the cause of action." Thus, "the defendant hostess . . . owed a duty to those using the highways not to subject them to an unreasonable risk of harm by furnishing alcohol to a person under 19 who was noticeably intoxicated and who these defendants knew would soon be driving his car." (Emphasis supplied.) Id. The duty "is to stop serving alcohol to the driver who is noticeably intoxicated (or share the intoxicated driver's liability to injured third persons)." Id. If this duty is breached, OCGA § 51-1-6 provides the cause of action. Id.

The statutory duty recognized by *Sutter* has been broadly construed to provide Georgia citizens with a modicum of *protection* from the varied reasonably foreseeable and life-threatening risks involved in continuing to serve alcoholic beverages to noticeably intoxicated persons. We believe this was the legislature's intent in enacting OCGA § 3-3-22. See, e.g., Ga. Const. Art. 1, Sec. 1, Par. 2. Thus, in *Brumbelow v. Shoney's Big Boy*, 174 Ga. App. 160 (329 SE2d 319),

where the manager *hosted* a company party at his personal residence for company employees, *Sutter* was found to be controlling although Shoney's had furnished alcoholic beverages to the minor only through its agent manager. See also *Dobozy v. Cochran Airport Systems*, 174 Ga. App. 625, 626 (330 SE2d 815) (company-hosted picnic for its employees). Likewise *Sutter* was found controlling by a majority of this court in *Southern Bell Telephone &c. Co. v. Altman*, 183 Ga. App. 611 (359 SE2d 385) (5-4 decision), cert. den. In *Southern Bell*, however, it was found that the action taken by the host company sponsoring a company awards banquet at a restaurant was sufficient to satisfy its *duty* to third parties. Id. at 612. In *Divecchio v. Mead Corp.*, 184 Ga. App. 447 (1) (361 SE2d 850), it was held that a *Sutter*-type cause of action "would lie where one *provides* alcoholic beverage to [an] adult who is about to drive a vehicle. In both instances, the provider has a *duty* not to subject third parties to an unreasonable risk of harm caused by such an intoxicated driver." (Emphasis supplied.) See also *Tibbs v. Studebaker's of Savannah*, 184 Ga. App. 642 (a) (362 SE2d 377), cert. den., holding the *Sutter* rationale applicable to a commercial establishment serving alcohol *to* adults.

We conclude that the statutory duty imposed by OCGA § 3-3-22, as interpreted by *Sutter* and its progeny does apply to E & G.

2. Cross-appellant/appellee E & G asserts that the trial court erred in denying its motion for summary judgment because there was no breach of any existing duty established as cross-appellees/appellants failed to submit any reliable evidence that E & G had provided alcohol to Sheliah Warren at a time when she was in a state of noticeable intoxication. In particular, we find the evidence regarding the results of Sheliah Warren's blood/alcohol tests and the eyewitness testimony of those who observed her conduct and condition at the scene of the collision, when coupled with the expert opinions contained in the affidavit of Dr. Burton, a medical doctor specializing in forensic pathology, to be sufficient to preclude the grant of summary judgment on this issue. See *Dickson v. Dickson*, 238 Ga. 672, 675 (235 SE2d 479). Accordingly we find cross-appellant's enumerated errors to be without merit.

*Case No. 77117 (Main Appeal)*

3. Appellants assert that the trial court erred in ruling that *Tibbs v. Studebaker's*, supra, "dram shop" liability extends to instances where the providers and furnishers of alcoholic beverages serve noticeably intoxicated persons who they "subjectively know will be driving." Appellants also assert that the trial court erred in holding that a hotel providing space and alcohol operates under a different "notice" standard than does the host who hires the hotel to cater the company

party.

In *Tibbs*, supra at 643 (a), the principal opinion, citing both *Sutter*, supra and *Southern Bell*, supra, concludes "'one who provides alcoholic beverages to a noticeably intoxicated person, knowing that the person will soon be driving a vehicle, may be liable for a third party's injuries caused by the negligence of the intoxicated driver.'" However, neither *Sutter* nor any of its progeny expressly determined whether knowledge required by the rule is actual or constructive. The basic concept of constructive knowledge is, "[i]f one by exercise of reasonable care would have known a fact, he is deemed to have had constructive knowledge of such fact. . . ." Black's Law Dictionary (5th ed.), p. 284.

In *Sutter*, the Supreme Court determined "dram shop" liability relying on recognized tort principles. The court listed the four tort elements of duty, breach, causation (actual and proximate) and damages. *Sutter v. Hutchings*, supra at 196-197. The court found that the defendant had statutory duties not to provide or furnish alcoholic beverages to persons noticeably intoxicated (OCGA § 3-3-22) and to persons under 19 years of age (OCGA § 3-3-23). *Sutter v. Hutchings*, supra at 197. The case facts in *Sutter* reflect that these duties were breached. Thus, the defendant alcohol provider was negligent per se. See *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 730 (333 SE2d 829), citing *Sutter v. Hutchings*, supra at 196-197. As "negligence per se supplies only the duty and breach of duty elements of a tort, the plaintiffs must still prove a causal connection (proximate cause) between the breach of this statutory duty and the injuries sustained . . . ," *Central Anesthesia*, supra at 730. The Supreme Court in *Sutter* next turned "to the question of proximate cause." *Sutter v. Hutchings*, supra at 197. The court concluded that "where one provides alcohol to a noticeably intoxicated 17-year-old *knowing* that he will soon be driving his car, it is foreseeable to the provider that the consumer will drive while intoxicated and a jury would be authorized to find that it is foreseeable to the provider that the intoxicated driver may injure someone." (Emphasis supplied.) *Sutter v. Hutchings*, supra at 198.

On close scrutiny, it is apparent that the Supreme Court limited the scope of its holding to those cases where the provider had *actual* knowledge that the recipient of the alcohol would be driving. Previously, the *Sutter* opinion had cited the case of *Keaton v. Kroger Co.*, 143 Ga. App. 23, 26 (237 SE2d 443), as precedent for the proposition that *in certain circumstances* "the act of furnishing the alcohol is *too remote* to be the proximate cause of an injury caused by the negligence of the consumer." *Sutter v. Hutchings*, supra at 198, 200. Thus, *Sutter* tacitly approves the holding in *Keaton*. In *Keaton*, the facts reveal that a store sold alcohol to certain minors under circumstances

where, although actual knowledge that one of the minors would be driving apparently was not established, the store by exercise of reasonable care could have ascertained readily that the youths would depart the store premises in a motor vehicle. See generally *Keaton v. Kroger*, supra at 23-24. Thus, we are satisfied that the trial judge correctly interpreted existing appellate court precedent as requiring a showing of *actual* knowledge that the recipient of alcohol would be driving in order to support a jury finding of proximate cause. Actual knowledge may be established either by direct or circumstantial evidence.

Thus, if appellee Laing succeeded in piercing appellants' pleadings as to the issue of knowledge, it would be entitled to summary judgment if it carried its burden of showing that there is no genuine issue as of actual knowledge of driving. OCGA § 9-11-56 (c). This same standard of proof applies equally in a summary judgment case to both the party host and his hired alcohol purveyor.

We agree with the trial judge that as to appellee E & G there exists sufficient evidence to raise a genuine issue of actual knowledge of driving. Further, for the following reasons, appellee Laing was not entitled to summary judgment. This court will consider neither mere allegations of fact found in the parties' pleadings nor unsupported assertions of fact contained in their briefs. *Behar v. Aero Med. Intl.*, 185 Ga. App. 845 (1) (366 SE2d 223). The affidavits by Laing employees contained in this record are insufficient to pierce the pleadings as to this issue. The affidavits do not *expressly* negate the existence of actual knowledge on the part of all Laing employees, who were working in the hotel that day and who may have observed the party attendees, that Sheliah Warren would be driving. For example, the record does not establish that all Laing employees who may have observed the party attendees have executed affidavits. The affidavit of the food and beverage director on the date of the party does not assert any lack of actual knowledge as to which attendees were driving or lack of ability to observe such facts, although he was duly employed by the hotel on that date. There exists no affidavit from the then general manager of the hotel. Accordingly, we find that the trial court erroneously concluded that Laing has pierced appellants' pleadings.

4. Appellant asserts that the trial court erred in ruling that attendance by managerial employees at an office Christmas party is "as a matter of law" never within the scope of employment. The trial court found "that at no time within the factual circumstances alleged was [Sheliah] Warren acting within her scope of employment at E & G." Under certain limited circumstances, an employee who becomes intoxicated at a company sponsored party may be found to be within scope of employment. See, e.g., *Southern Bell*, supra at 614

(dissenting opinion) and cases cited therein. Generally, when a servant injures another, "the test to determine if the master is liable is whether or not the servant was *at the time of the injury* acting within the scope of his employment and on the business of the master." (Emphasis supplied.) *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186). The circumstances of this case establish that Sheliah Warren was not in the scope of her employment with E & G at the time of the collision. Neither was she in the scope of her employment at either party. See *Divecchio v. Mead Corp.*, supra at 448-449; *Dobozy v. Cochran Airport Systems*, supra at 625; *Healthdyne Inc. v. Odom*, 173 Ga. App. 184 (1) (325 SE2d 847), cert. den. Thus, we are satisfied that the trial court correctly granted summary judgment on the issue of respondeat superior.

5. Appellant asserts that the trial court erred in ruling that the specifics of a conspiratorial agreement must be proved upon summary judgment rather than applying the prevailing standard of passive mutual understanding. We disagree.

In this case there is evidence of a lawful contractual relationship between E & G and Laing; there is also circumstantial evidence that a Laing-employed bartender served alcoholic beverages to Sheliah Warren, an employee and guest of E & G, after she was noticeably intoxicated in violation of OCGA § 3-3-22. However, while this and other circumstances may arouse one's suspicion, we find no evidence of the requisite "mutual understanding" between Laing and E & G. *First Fed. Savings Bank v. Hart*, 185 Ga. App. 304, 305-306 (363 SE2d 832); see *Cook v. Robinson*, 216 Ga. 328 (5) (116 SE2d 742). Accordingly, this enumerated error is without merit.

Based on the above, the trial court did not err in granting partial summary judgment to appellee E & G on the issue of respondeat superior; did not err in denying the remainder of appellee E & G's motion for summary judgment; and, did err in granting summary judgment to appellee Laing. This case will be remanded to the trial court for further proceedings consistent with this opinion. This determination, however, should not "be construed as authority for the proposition that [appellants'] evidence would, had it been offered at trial, necessarily be sufficient to withstand a motion by [appellees'] for directed verdict." *Winn-Dixie v. Ramey*, 186 Ga. App. 257, 258 (366 SE2d 785). Such a determination would be controlled by the posture of the evidence at such time.

*Judgment in Case No. 77118 affirmed. Judgment in Case No. 77117 affirmed in part and reversed in part and case remanded with direction. Banke, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

### Case No. 77118 (Cross-Appeal)

I concur in the disposition but not in all that is said in Divisions 3 & 4, for reasons which will appear below.

### Case No. 77117 (Main Appeal)

1. As to Division 3, in *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716) (1985), the Supreme Court of Georgia coupled OCGA § 3-3-22 with OCGA § 51-1-6 to hold that in Georgia, a civil cause of action lies in certain circumstances to recover for a breach of the duty derived from the prohibition in OCGA § 3-3-22. (That case also held that the additional duty specified in OCGA § 3-3-23 relating to minors who also breached because the consumer was a minor.)

OCGA § 3-3-22 simply states: "No alcoholic beverage shall be sold, bartered, exchanged, given, provided, or furnished to any person who is in a state of noticeable intoxication." It does not limit this prohibition to serving *drivers of motor vehicles*. It clearly states that serving anybody who is noticeably intoxicated is prohibited.

OCGA § 3-3-22 is a criminal law. Ga. L. 1980, pp. 1573, 1596, 1649. See *Nunn v. Comidas Exquisitos*, 166 Ga. App. 796 (305 SE2d 487) (1983); *Riverside Enterprises v. Rahn*, 171 Ga. App. 674 (320 SE2d 595) (1984). The Act provided, in former Code § 5A-509, that furnishing alcoholic beverages to intoxicated persons (and minors) is prohibited, and in Code § 5A-9901 it gave enforceability to prohibiting that forbidden activity by making it a misdemeanor if it is done "knowingly and intentionally." The prohibition appeared in Chapter 5A-5, which set out regulatory provisions applicable to alcoholic beverages and began: "The businesses of manufacturing, distributing, selling, handling, and otherwise dealing in or possessing alcoholic beverages are declared to be privileges in this state and not rights." Code § 5A-501 (OCGA § 3-3-1). The chapter then imposes controls, including licensing requirements, primarily on the commercial establishments described. The dissent in *Southern Bell Telephone &c. Co. v. Altman*, 183 Ga. App. 611, 613 (359 SE2d 385) (1987) noticed this and regarded the related OCGA § 3-3-23 to have been "enacted by the Legislature to apply to commercial purveyors of alcoholic beverages," as demonstrated by OCGA § 3-3-1. See also *Tibbs v. Studebaker's of Savannah*, 184 Ga. App. 642, 643 (a) (362 SE2d 377) (1987).

Although the section regarding intoxicated persons appears in this business context, the Court in *Sutter* both declared it a civil as well as a criminal duty and extended it beyond businesses to private persons furnishing gratuitous alcoholic beverages, such as Mrs.

Hutchings.

But the civil duty was not as broad as stated in the statute. Instead of matching the civil duty with the criminal duty insofar as who could be served is concerned, the Court limited it to motor vehicle drivers. This newly recognized actionable duty was founded on the Court's taking judicial notice of 1) "risks involved" when an intoxicated person drives, and 2) "the General Assembly's efforts to control drunk driving for the protection not only of those drivers but others on the highways, . . . ." Id. at 197. These two factors, then, are what gave rise to the articulation of a civil duty in OCGA § 3-3-22 (formerly Code § 5A-509) and to its limitation to drivers. That is, the statutory criminal duty of commercial establishments not to serve an intoxicated person was made the civil duty of purveyors and hosts alike, when it was known the drinker would drive. Breach by continuing to serve such a person who was noticeably intoxicated would constitute negligence per se. *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 730 (1) (333 SE2d 829) (1985), discusses the negligence per se principle. See also Note, 9 Ga. L. Rev. 239, 258 (1974).

Thus the Supreme Court narrowed the civilly actionable duty even further. The criminal law, as stated, prohibits at least the businesses described in OCGA § 3-3-1 from "knowingly and intentionally" furnishing alcoholic beverages to intoxicated persons. Never mind what the liquor purveyor knows or does not know the intoxicated person will or might do afterwards; that is irrelevant. What matters is whether the purveyor knowingly and intentionally furnished an alcoholic beverage to a noticeably intoxicated person, period.

In addition to the statutorily required knowledge, that the person was intoxicated when another alcoholic beverage was about to be served, the Court required another knowledge before a civil duty arose: knowledge that the intoxicated person would soon be driving a motor vehicle. That, of course, would require a present knowledge of a future happening, a future fact. No human being has such a capacity, so the Supreme Court could not have meant actual knowledge in that sense. This is so also because when turning to the element of proximate cause, the Court concluded that proximate cause will exist if the provider could, when furnishing that beverage to an intoxicated person, reasonably foresee that the person would be driving and also that someone may be injured as a result. Id. at 198.

The legislature cannot be said to be concerned only with drunk drivers, either by this prohibition or even because of the existence of the drunk driving laws. Common sense and experience demonstrate that intoxicated persons often get into fights, are disorderly, hurt themselves, batter their spouses and partners, assault their children, and act in other ways injurious to members of the general public. The majority acknowledges this by stating: "The statutory duty recog-

nized by *Sutter* has been broadly construed to provide Georgia citizens with a modicum of *protection* from the varied reasonably foreseeable and life-threatening risks involved in continuing to serve alcoholic beverages to noticeably intoxicated persons. We believe this was the legislature's intent in enacting OCGA § 3-3-22."

However, the Supreme Court found the only *declared* public policy involving drinking and harm to third persons to be in the D.U.I. laws. It did not say a person harmed by an intoxicated person in a non-motor vehicle confrontation would likewise have a cause of action. In any event, such a question is not before us in the circumstances of this case, because a driver is involved, and since the Supreme Court has limited the civil duty, so that it does not arise unless the provider at that time has some knowledge that the intoxicated person will drive, we must do the same.

I do not agree with the majority that this knowledge of a future fact must be actual. It involves instead the prediction of conduct, as *Keaton v. Kroger Co.*, 143 Ga. App. 23, 28 (237 SE2d 443) (1977) recognized. In applying the principles inherent in *Sutter*, the duty must be found to arise when, under all the circumstances, a person in the shoes of the provider would reasonably foresee that the intoxicated person to whom he is about to furnish an alcoholic beverage will drive while intoxicated to the degree that harm is reasonably foreseeable (or "that the intoxicated driver may injure someone," in the words of *Sutter*, supra at 198.) Circumstantial, and not only direct, evidence would suffice.

As quoted in the dissent in *Southern Bell*, supra at 617, issues of " 'lack of ordinary care in failing to foresee or observe the negligence of another, are ordinarily not susceptible of summary adjudication [Cit.] and unless only one conclusion is permissible [Cits.], the issue should be resolved by the jury . . . , and even where there is no dispute as to the facts, it is usually for the jury to say whether the conduct in question met the standard of the reasonable man.' "

As in *Brumbelow v. Shoney's Big Boy*, 174 Ga. App. 160, 161 (329 SE2d 319) (1985), there is a genuine dispute as to the defendants' knowledge "that [Warren] would be driving."

Just because in the cases following *Sutter* the intoxicated person's imminent driving was fairly foreseeable does not mean that it has to be an absolute certainty. (In *Tibbs v. Studebaker's of Savannah*, 184 Ga. App. 642, supra at 644, e.g., it was uncontroverted that defendant, "through its agents, knew [the patron] would be driving a vehicle.") While the duty may only devolve on one who actually knows the person he is furnishing the beverage to is *then* intoxicated in the sense that it is, in the words of the statute, "noticeable," at that point in time the most that the host or purveyor would know with respect to driving is that it was reasonably foreseeable that the

person would drive. For the actionable duty to arise, the potential defendant must be on present notice that the drinker would soon drive. To say that the purveyor must actually know this fact before it is fact eliminates the duty, for all practical purposes. The same demise would result from saying that only direct evidence of knowledge would raise the duty.

Here, of course, there is evidence that E & G's vice-president knew Warren would be driving when she was served drinks, as this is a reasonable inference from the circumstances, including the fact that arrangements were made for her to drive his wife to the second party in Warren's own car. So I agree that E & G, as host, was not entitled to summary judgment.

As to the purveyor Laing, it would appear that if the statute as such is viewed as raising the civil duty, it would not matter whether the purveyor had knowledge that the intoxicated person would drive, and whether that knowledge was actual or constructive, direct or indirect, or even reasonably foreseeable. The duty would be founded solely on the presentation to a business, as described in OCGA § 3-1-1, (referred to as a "commercial establishment" in *Tibbs*, supra, 643-644), of a noticeably intoxicated person who sought another drink. The duty will have arisen from the desire to protect the general public from whatever that intoxicated person would do if he had another drink. But since the Supreme Court limited the civilly actionable duty itself, to one where there is knowledge of imminent driving, the knowledge element also applies to Laing. Thus, whether it was reasonably foreseeable to Laing that Warren would drive must be determined by the jury from the circumstances known by the employee who served Warren.

It is to be noted that, by the 1988 enactment of OCGA § 51-1-40, which was not yet in effect when the death here occurred, the General Assembly expressly created a civil duty with respect to those intoxicated persons whom the purveyor or host knows "will soon be driving a motor vehicle." The breach, followed by proximate cause and damage, will give a statutory cause of action in tort. Under this enactment, as under *Sutter* but not under OCGA § 3-3-22 itself, knowledge of imminent driving is made a prerequisite before a provider has a duty to stop serving.

2. As to Division 4, I cannot go so far as to say that, as a matter of law, the circumstances shown establish that Warren was not in the scope of her employment while at the E & G party at the hotel. See *Divecchio v. Mead Corp.*, 184 Ga. App. 447, 448 (361 SE2d 850) (1987). Whether she was or not is not material, however, because as the majority states, it is her status at the time the injury is inflicted that is determinative.

Decided January 23, 1989 —
Rehearings denied February 7, 1989 — 

*Hylton B. Dupree, Jr., Mark A. Johnson,* for appellants (case no. 77117).

*Malcolm P. Smith, G. Melton Mobley,* for appellees.

*Neely & Player, Taylor Tapley Daly, Richard K. Hines V,* for appellants (case no. 77118).

*Hylton B. Dupree, Jr., Mark A. Johnson,* for appellees.