A90A1870. PIRKLE v. HAWLEY et al.
(405 SE2d 71)

BEASLEY, Judge.

Plaintiff Pirkle appeals a judgment entered upon a jury verdict for defendant Gwinnett Daily News (a partnership) and against defendant Hawley for $50,000. She was injured on December 20, 1987, when her car was struck by an automobile driven by Hawley, who was intoxicated. Pirkle sued Hawley based upon his direct acts of negligence and sought recovery against the News for furnishing alcoholic beverages to a noticeably intoxicated person, knowing that person would soon be driving a vehicle, and for failing to take proper steps to prevent Hawley from driving after awareness of his intoxication.

The following appears from that version of the facts favorable to the verdict. The Advertising and Promotions Department of the Gwinnett Daily News planned a Christmas party for its employees, about 35 in number. The News subsidized the party in the amount of $350, about half the total expenses. The party was set for Sunday, December 20, and Bob Gruber, the retail sales manager, was delegated responsibility for it. He spent the money on room rental at the B&B Ranch on Old Peachtree Road, a keg of beer, food, and party supplies. He sent an invitation requesting that women bring a covered dish and men a quart of liquor. Attendance was optional and spouses or dates were included. Gruber was aided in facilitating the party by Sam Knox, an employee in the News' advertising department.

During the party preliminaries, Gruber and Sam Knox discussed how they would handle anyone who got drunk. They decided to be on the lookout and to use common sense in managing any situations which arose. The party was scheduled to begin at 3:30 p.m. Around that time, Hawley, a News employee, arrived driving his own car and drinking his own beer. Over the next few hours he consumed ten to twelve 16-ounce cups of beer. Witnesses who attended the party agreed that he became noticeably intoxicated but gave varying times when this occurred. Knox noticed that Hawley was too intoxicated to drive at around 6:30 p.m. and brought this to Gruber's attention. Having discovered another drinking problem, Gruber decided to take

responsibility for the other person, so Sam Knox and his wife Patricia sought out Hawley and attempted to convince him to let them take him home. At first he declined. They finally prevailed upon him to let Sam drive him home in Hawley's auto and Patricia follow in the Knox car. Because the Knoxes needed to help with the clean-up, they asked Hawley to wait. He remained in that area, usually seated, while they finished their chores. When Sam asked Hawley directions to his home and Hawley responded only incoherently, Sam went to ask Gruber for directions. When they returned, Hawley had left. They went outside and saw the taillights of the Hawley vehicle as it pulled from the driveway out onto Old Peachtree Road. They discussed what to do but took no further action.

Drinking his own beer and driving erratically and rapidly, Hawley collided with the rear of Pirkle's auto on I-85. His car flipped over several times and he was thrown from it. Pirkle's car spun across the road and hit a guard rail on the driver's side. Other vehicles were also involved.

Pirkle was treated at the scene by paramedic Adcock and transported to Gwinnett Medical Center. She was admitted for injuries which included a dislocated kneecap, a fractured wrist, lacerations and bruises. Besides asking damages for those injuries, Pirkle also sought to recover for a closed head injury which she asserted resulted in losses of IQ, abstract reasoning ability and short-term memory. She supported her contentions with her testimony, the testimony of a friend, her mother and an expert. The expert's opinion was that she lost 16 IQ points and suffered from reasoning ability and short-term memory loss.

Two truck drivers who stopped at the scene testified that Pirkle was wedged down in her car, moaning, and that she appeared dazed but was able to respond to questions. Paramedic Adcock, when he first arrived, found her conscious and able to respond to questions but confused. According to Adcock, Pirkle was not sure whether she had lost consciousness. He found no evidence that her airway had been obstructed. Pirkle told the nurse at the hospital that she had not lost consciousness. The emergency physician did not treat her for a closed head injury because after standard medical examination there were no indications she had one.

Defendants, in an effort to show at trial that any brain damage to Pirkle was not the sole result of injuries sustained in the collision, introduced evidence that Pirkle had a past history of drinking and drug use. She admitted she had a problem about nine years before. As further proof of other causes of any brain damage, defendants showed that she suffered from depression and other emotional factors resulting from her involvement in a 1967 serious wreck, and that she had a series of unsatisfactory relationships with alcoholic or drug-addicted

men.

There are 14 enumerations of error.

1. Enumerations one and two assert error in the failure to grant Pirkle's motions for directed verdict, judgment n.o.v. and new trial. They all assert that the evidence demanded a finding for her against the News on the issue of liability, in that the evidence shows Hawley was intoxicated at the party, that those representing the News became aware of his condition, and that they failed to preclude further drinking. Thus, she argues that regardless of any efforts made to keep Hawley from driving, the News was liable as a matter of law.

Because enumeration four challenges the trial court's charge on this issue, its resolution governs enumerations one and two.

The court instructed the jury that the alcohol provider first has a legal duty not to furnish alcohol to a noticeably intoxicated person knowing that person is soon to drive, and if that duty is breached, the provider has a duty "to exercise ordinary care to prevent an unreasonable risk of harm to the public highway users from the intoxicated driver." It was defendant News' request five verbatim. A little later the court reiterated: "If alcohol is furnished to a noticeably intoxicated person that (sic) is known to soon be driving a vehicle, then and in that event the provider has the duty of exercising ordinary care to prevent an unreasonable risk of harm to public highway users from the intoxicated driver."

When offered an opportunity to voice objection, which was done after the charge was given, Pirkle's counsel stated: "I object to . . . charge . . . number five of defendant News Company. I believe two things. One is when you said in other words, you repeated and emphasized something I think that was detrimental." The court interjected, "It didn't help your case, did it?" Counsel acknowledged, "no, it didn't," and moved on to: "Secondly, I don't believe ordinary care is the standard. I believe that is too low of a standard." The court stated: "You don't have to argue it right now because I am not going to change it," to which counsel replied, "all right." At the charge conference, counsel had objected to defendant's charge five but, without hearing the reasons, the court said the objections could be made after charge was given.

The "in other words" objection related to a restating of the initial duty, imposed by OCGA § 3-3-22, *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716) (1985); *Southern Bell Tel. &c. Co. v. Altman*, 183 Ga. App. 611 (359 SE2d 385) (1987); and *Divecchio v. Mead Corp.*, 184 Ga. App. 447 (1) (361 SE2d 850) (1987). Repeating a legal principle in other language so as to clarify it for the jury is not error. *Jackson v. Rodriquez*, 173 Ga. App. 211, 213 (2) (325 SE2d 857) (1984); *Dixie Mfg. Co. v. Riggs*, 30 Ga. App. 433, 434 (4) (118 SE 452) (1923).

Appellant argues that request five as given was a misstatement of

the law because breaching the initial duty may not be defended by proving that a subsequent duty was fulfilled. Assuming arguendo that this was properly raised below, it fails on the merits. It is not that the fulfillment of the duty which follows breach of the statutorily-based duty excuses the breach. Quite the contrary. The breach gives rise to the subsequent duty, a duty which does not even exist if the law against furnishing is complied with.

If the alcohol provider stops serving a noticeably intoxicated person, he is not liable for the damages that person later inflicts. If the alcohol provider continues to serve and knows the intoxicated person is about to drive, the provider creates for himself or herself "a duty not to subject third parties to an unreasonable risk of harm caused by the intoxicated driver." *Southern Bell*, supra at 612 (2), citing *Sutter*, supra. Fulfillment of the additional duty acts to remove the breach of the earlier, initial duty as the proximate cause of the injury.

Pirkle next argues that even if fulfillment of the subsequent duty can give escape from liability, the standard of ordinary care is too low.[1] According to Pirkle, the breaching provider's reacting by taking "reasonable measures" to prevent the intoxicated person from driving is not sufficient, because the circumstance which placed on defendant the duty to react was a breach of legal duty on his part in the first place. Thus, the argument projects, the standard should be higher.

This fleshes out the objection made in the trial court. It is not persuasive because the controlling cases, which have been cited above, do not establish or refer to any standard other than, inferentially, the standard of ordinary care. For example, *Southern Bell*, supra at 612 (2), which focused on the subsequent duty, states: "The provider has a duty not to subject third parties to an unreasonable risk of harm caused by the intoxicated driver." *Sutter*, supra at 196-197, speaks of a duty "to conform to a certain standard of conduct, for the protection of others against unreasonable risks," without identifying any special standard in the circumstances of that case. See also *Whelchel v. Laing Properties*, 190 Ga. App. 182, 183-184 (1) (378 SE2d 478) (1989), and the other cases cited therein.

The trial court's instruction was not subject to the objections urged against it.

The next concern is sufficiency of the evidence. The law regarding purveyors of alcoholic beverages applies to social hosts' furnishing alcohol to their adult guests. See *Tibbs v. Studebaker's of Savannah*, 184 Ga. App. 642, 644 (362 SE2d 377) (1987); *Studebaker's of Savannah v. Tibbs*, 195 Ga. App. 142 (392 SE2d 908) (1990). A commercial

---

[1] It is notable that by pleadings and assertions during pretrial, one of Pirkle's principal contentions was that defendant News failed to exercise the requisite care or acted negligently after discovering Hawley was intoxicated.

establishment can stop serving its customer when it becomes aware that the customer is noticeably intoxicated. The remedy is not available to the social host who is conducting a party with a "serve yourself" bar. Our appellate courts have not adjudicated what type of restraint a social host is justified in using to prevent further imbibing by a guest. An even more serious question is presented when the guest announces or evinces an intention to drive home. What then must the social host do? Is physical force acceptable? At what point might it become false imprisonment? Numerous questions have not been legally resolved.

Nevertheless, Georgia has determined that a social host may be liable to third persons for furnishing alcohol to a guest and that the social host must take some action to prevent the guest from driving once he or she is discovered to be intoxicated. *Whelchel*, supra; *Tibbs II*, supra at 144, (2); *Altman*, supra. See *Sutter*, supra. Compare *King Cotton v. Powers*, 190 Ga. App. 845, 851 (380 SE2d 481) (1989). Given the facts presented here, liability was a jury question rather than a matter of law. Did those who were acting for the News, do what a reasonable person would have done to prevent harm to third persons who might be injured by the prospective drunken driver? The jury was the proper responder, and the evidence was sufficient to sustain the verdict.

2. Enumeration three complains of the failure to give six written requested instructions. Each enumeration may contain only one alleged error. See *MacDonald v. MacDonald*, 156 Ga. App. 565, 566 (1a) (275 SE2d 142) (1980). In that respect the enumeration is deficient.

Other defects appear. The objection made regarding the requests was that the trial court omitted written request numbers 35, 36, 37, 38, 39 and 52. Pirkle's requests are not numbered as set forth in the record. Interpolating the 86 requests with their place in the record, it appears that Pirkle complains on appeal of the failure to charge numbers 23, 43, 55 and 56 instead of 35, 36, 39 and 52. None of these requests need be considered. *Nolen v. Murray Indus.*, 165 Ga. App. 785, 787 (5) (302 SE2d 689) (1983).

Request 38 states in part: "a cause of action lies where one provides alcoholic beverages to a noticeably adult whom he knows will be driving a motor vehicle." The word "intoxicated" was left out. A request to charge must be perfect in form, *Evans v. Caldwell*, 52 Ga. App. 475, 486 (5) (184 SE 440) (1935), and 38 is not. As to request 37, its substance was given in charge and no error is presented by its omission. *Fidelity Nat. Bank v. Kneller*, 194 Ga. App. 55, 62 (3e) (390 SE2d 55) (1989).

3. Enumeration five focuses on alleged error by charging comparative negligence and apportionment of damages and in submitting

two different verdict forms for consideration. At trial, counsel objected to the verdict forms on the basis that apportionment should not have been included but did not indicate why. He also objected to the charge on apportionment without stating a basis.

While *Christiansen v. Robertson*, 237 Ga. 711 (229 SE2d 472) (1976), relaxed the rules regarding the necessity for specific objection, it did not dispense with the need for an objection entirely. See *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821, 822 (2) (354 SE2d 6) (1987); *Stearns v. Thomas*, 192 Ga. App. 395, 396 (384 SE2d 672) (1989).

Besides, the instruction is not erroneous. It did not address comparative negligence but only the principles of OCGA § 51-12-33 (a), which states: "Where an action is brought against more than one person for injury to person or property and the plaintiff is himself to some degree responsible for the injury or damages claimed, the trier of fact . . . may apportion its award of damages among the persons who are liable." There was evidence, although slight, which tended to show that Pirkle was at least partly responsible for any brain injury she might have incurred. A charge on an issue may be sustained if there is any evidence to warrant it. *Harper v. Hall*, 76 Ga. App. 441 (2) (46 SE2d 201) (1948); *Bowie Martin v. Dews*, 73 Ga. App. 73, 76 (1) (35 SE2d 577) (1945).

Finally, the jury did not apportion damages. Appellant has failed to show harm by the instructions or the two verdict forms.

4. Enumeration six asserts that certain requested instructions on general damages should have been given. The failure to object at trial precludes assignment of error except as provided by OCGA § 5-5-24 (c), which does not obtain. *American Family Life Assur. Co. v. Queen*, 171 Ga. App. 870, 875 (11) (321 SE2d 750) (1984); *DeVane v. Smith*, 154 Ga. App. 442, 445 (3) (268 SE2d 711) (1980).

5. Refusal to permit Pirkle to introduce evidence of aggravating circumstances is enumeration seven. See OCGA § 51-12-5.1. The parts referenced to the transcript indicate no showing of what Pirkle intended to prove. The court invited such a proffer. Plaintiff's failure is fatal to the enumeration. See *Thompson v. Hill*, 143 Ga. App. 272, 274 (2) (238 SE2d 271) (1977); *Worn v. Warren*, 191 Ga. App. 448, 449 (2) (382 SE2d 112) (1989); *McKee v. Hurst & Co.*, 21 Ga. App. 571 (1) (94 SE 886) (1918).

6. Enumeration eight addresses the failure to give a requested charge on the issue of punitive damages. Since no objection was made during trial, the omission will not be reviewed. *Turner v. Taylor*, 179 Ga. App. 574, 575 (3) (346 SE2d 920) (1986).

7. Enumeration nine complains of the failure to permit counsel to cross-examine four witnesses under the provisions of OCGA § 24-9-81. One was Patricia Knox, wife of an employee of defendant News but

never an employee herself; two were former employees but otherwise employed at trial time. The witness must be an agent at the time of trial; it is not sufficient to have been an agent at the time of the occurrence. *Mullis v. Chaika*, 118 Ga. App. 11 (2) (162 SE2d 448) (1968); *Massey Jr. College v. Taggart*, 140 Ga. App. 591 (1) (231 SE2d 540) (1976).

The fourth witness was still employed by defendant News. It was announced that he was being called for cross-examination, but a direct examination was conducted. Nevertheless, Pirkle fails to demonstrate any harm from inability to fully exercise her right under the code. *Ingram v. Peterson*, 196 Ga. App. 888, 890 (6) (397 SE2d 141) (1990); *Atlanta Americana Motor Hotel Corp. v. Sika Chem. Corp.*, 117 Ga. App. 707, 711 (4) (161 SE2d 342) (1968).

8. Enumeration ten points to the exclusion of an investigating officer's report containing hearsay information that he was told by others that Pirkle had stopped breathing. OCGA § 24-3-4 provides an exception for statements made for purposes of medical diagnosis or treatment. It refers only to statements made by or on behalf of the patient when seeking medical aid. It does not even cover statements of medical opinion made by one physician to another, *Dunn v. McIntyre*, 146 Ga. App. 362, 363 (2) (246 SE2d 398) (1978), much less a second-hand recitation of what the witness was told by another person concerning the injured plaintiff's condition.

9. Enumeration 11 focuses on the trial court's requiring Pirkle to remain in the courtroom during the trial. *Masonry Standards v. UPS Truck Leasing*, 257 Ga. 743 (363 SE2d 553) (1988), held that the trial court lacked authority to impose sanctions for a defendant's failure to appear at trial.

Pirkle was only required to be present during the voir dire so that the jurors could be questioned as to whether they recognized or were acquainted with her. The court stated it would take requests to be excused "from time to time" as they arose. Other than that, Pirkle does not show she was forced to remain when she desired to leave or that any of her requests to leave were denied.

Trial courts are invested with a wide discretion in regulating and controlling the business of the court. It will not be interfered with unless it appears that wrong or oppression resulted. *Atlanta Newspapers v. Grimes*, 216 Ga. 74, 79 (5) (114 SE2d 421) (1960); *Scocca v. Wilt*, 243 Ga. 2, 3 (252 SE2d 401) (1979). There is no showing of abuse. *Chapman v. Avco Fin. Svcs.*, 193 Ga. App. 147 (1) (387 SE2d 391) (1989).

10. Enumeration 12 relates to Pirkle's motion in limine to prevent evidence of her alcohol and drug use nine to ten years before the automobile wreck. The trial court responded: "if you have got some objections bring them up at the time." This does not amount to an

overruling of the motion. *Morris v. Southern Bell Tel. &c. Co.*, 180 Ga. App. 145 (1) (348 SE2d 573) (1986) controls. It held that the court had discretion to reserve ruling on a motion in limine, which it exercised by stating that appellant would have to object to the evidence as it was offered. Pirkle did not invoke a further ruling. See also *Stacey v. Caldwell*, 186 Ga. App. 293 (1) (367 SE2d 73) (1988); *Hicks v. State*, 175 Ga. App. 243 (1) (333 SE2d 113) (1985).

11. Enumerations 13 and 14 contend that plaintiff was entitled, as a matter of law, to recover damages from defendant Hawley for abusive litigation under *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986), and also for stubborn litigiousness under OCGA § 13-6-11. By agreement of the parties these issues were decided by the trial court, which determined there was inadequate basis for either. The evidence did not demand a contrary finding. *Biosphere Indus. v. Oxford Chemicals*, 190 Ga. App. 613 (379 SE2d 555) (1989); *Bouchard v. Fowler*, 193 Ga. App. 697 (388 SE2d 874) (1989); *General Refractories Co. v. Rogers*, 240 Ga. 228, 235 (2) (239 SE2d 795) (1977).

*Judgment affirmed. Pope and Andrews, JJ., concur.*

DECIDED MARCH 6, 1991 —
REHEARING DENIED MARCH 28, 1991 —

*Goodman & Bush, James E. Goodman, Norman Lee Smith*, for appellant.

*Murray, Temple & Dinges, William D. Temple, Jeffrey P. Raasch, Daniel MacDougald III*, for appellees.